BARCUS, Respondent, v. HANNIBAL, RALLS COUNTY AND PARIS PLANK ROAD COMPANY, Appellant.

1. Where one agrees to construct a plank road and fails to complete the same in the manner prescribed in the contract, he can only recover, if at all, on a *quantum meruit*.
2. The value of the work done must, in such case, be adjusted upon the theory that the work, if it had been completed according to the contract, would be worth the contract price.
3. An engineer of a plank road company, who has power under the contract for the construction of the road to control the contractor, and whose duty it is, among other things, after the road is completed, to make an estimate of all the work done, has no power, if it be found that the road has not been built according to contract, to bind the company to adjust the matter in any particular mode.
4. Acts of the directors of a corporation, to bind the corporation, must be done in their official capacity.

*Appeal from Ralls Circuit Court.*

This was a suit to recover a balance alleged to be due to the plaintiff for the construction of the Hannibal, Ralls County and Paris Plank Road. It is deemed unnecessary to set forth the facts adduced in evidence; they sufficiently appear in the opinion of the court. The following instruction the court, on its own motion, gave to the jury: "If the jury find that after the road was constructed the plaintiff proposed that the company should accept and receive the road by a deduction from the contract price thereof of such sums, for deficiencies in the work, as the engineer should estimate to be sufficient to complete the road according to the original contract, and that the engineer did proceed to make such esti-

mates, and that the company afterwards adopted those estimates as a basis of settlement, and agreed to receive the road on that condition, and did afterwards receive and use the road, then both parties are bound by those estimates, unless they shall find that the plaintiff, by false representations of facts known to himself and not known to the engineer, or by fraudulent concealments from the engineer of defects in the road, induced the engineer to make his estimates of defective work less than their just value; in such case the jury shall allow the company; in addition to the estimates of deficiencies made by the engineer, whatever damages the company may have sustained in consequence of such fraud of the plaintiff."

Other instructions were given and refused. The jury found for plaintiff.

*Richmond*, for appellant.

*Broadhead* and *Henderson*, for respondent.

I. By a fair construction of the contract between the parties the engineer was to direct and specify the kind of work to be done, and was empowered to judge of the quality of the work and whether it was done according to his specifications and the terms of the contract, and the company was therefore concluded in the matter by his judgment in regard thereto, unless the plaintiff practiced a fraud upon him.

II. If the defendants received the road and enjoyed the benefits of it, they are liable to plaintiff for the value of his work and materials not exceeding the contract price, though the work may not have been done according to contract, deducting such deficiencies as may have grown out of a failure to comply with the contract on the part of plaintiff. Under the contract the engineer was the proper person to judge of such deficiencies, and his action in the premises is conclusive upon defendants. (Cutter v. Powell, 2 Smith L. Cases, 22; Lee v. Ashbrook, 14 Mo. 378; Britton v. Turner, 6 N. H. 481.) The instructions given by the court were therefore correct. By the terms of the contract the contractor is to

" be governed in all things relating to the work by the engineer." His directions and acts then become a part of the contract as much as if they were written down and signed by the parties. If the engineer has violated the trust reposed in him by the company, they must look to him and not to the contractor.

SCOTT, Judge, delivered the opinion of the court.

Justice requires that the plaintiff should be paid the full value of his work. As he agreed to build a road in a complete and workmanlike manner for $2,300 a mile, if he failed to make the road as required by his agreement, he can only expect to receive as much as the road built by him is worth, considering that if it had been built in all respects in pursuance to the contract it would have been worth $2,300 per mile. To escape from this equitable mode of determining the controversy, the plaintiff has endeavored to set up an estimate or estimates by the engineer of the defects in the construction of the work, which he maintains are conclusive between the parties to this suit. It was certainly competent for the defendant to contract that the estimates of the deficiencies in the execution of the work should be made by an engineer, and that his estimates should be binding on the parties interested. As the plaintiff sets up this defence in order to avoid the rule dictated by natural justice for the adjustment of this dispute, he should show, by evidence that would satisfy a jury, that there was such an understanding between the parties. There is no hardship in holding the plaintiff to this proof, as in the event of his failure to make it he is still entitled to the value of the work performed by him estimated according to the terms of the contract, inasmuch as the defendant has taken and used the road.

By the contract it was agreed that the work should be completed by the first of November, 1853. In December following the contractor called on the engineer to examine and receive the work. Upon an examination of it the engineer in-

formed the contractor that he had not complied with his contract and that he should not receive the road. The contractor then made the proposition to the engineer that an estimate of the deficiencies in the performance of the work should be made and deducted from the contract price for building the road. · After this two estimates of the deficiencies in the construction of the work were made by the engineer and submitted to the company. As by the terms of the contract the engineer was only authorized to make an estimate of the whole work when it was completed, and as he refused to receive the work on the ground the contract had not been complied with, his duty in relation to the contract thereupon ceased, and it was not competent for him to enter into any arrangement with the contractor in relation to the manner in which the deficiencies of construction should be made good to the company.

The parties to the contract might have agreed that the engineer's report should determine the amount of deductions to be made from the contract price of the work, but in the absence of any such agreement we do not see how the engineer could bind the company, as there was no power for any such purpose in the contract. Nor do we conceive that there is any thing in the record which shows that the company ever consented to the proposition made by the contractor. We do not see how the presence of the directors in their unofficial capacity on the day the proposition was made can be considered as any evidence of their assent or the assent of the company to the proposition. They were not so organized as to do any act binding on the corporation; nor did they attempt so to do. Nor do we see how the subsequent action of the board on the estimates could bind the company, as that action ultimately resulted in a determination not to abide by them. The proposition of the contractor, as stated by the engineer, did not specify that the estimate should be made by the engineer. The fact that the board did, by a resolution on the 30th of December, 1853, call upon the engineer for a final estimate of the work done by the contractor, is scarcely

any evidence of an agreement between the board and the contractor. As the engineer was an agent for the company, employed at a salary, what was more natural than that they should call upon him for information in regard to the manner in which the work had been performed. The action of the board on the estimates submitted by the engineer is no evidence of their concurrence in the reports; so far from it, they revised and amended them, showing thereby that they did not regard themselves under any contract in relation to the estimates. Indeed, as has been before stated, the contract, as proved by plaintiff's witness, did not stipulate that the estimate of deficiencies should be made by the engineer.

We have said that the contract did not authorize the engineer to make any arrangement with the contractor by which any deficiency in the work might be made good to the company. The instruction given by the court on this subject seems to base the binding effect of the engineer's estimate on a supposed agreement made between him and the contractor in December, 1853, and its subsequent ratification by the board. The contract provides that the road shall be built according to the engineer's specifications and plans, and to be governed by the engineer in all things relating to the work. A subsequent clause, after providing for monthly estimates of the work done with a view to making payment for it, stipulates that within thirty days after the road is completed an estimate of all the work done shall be made and the amount due the contractor shall be paid. These are all the provisions in the contract relative to the manner of its performance; and it will be seen that they confer no authority on the engineer in relation to the making of estimates in the event of a misunderstanding between the parties arising out of a failure on the part of the contractor to perform his work according to the specifications annexed to the contract.

We do not well see how the instruction relative to the estimates, even admitting that the company is bound by them, can be sustained. It seems to be inconsistent with itself. The phrase " and that the company afterwards adopted those

estimates as a basis of settlement," taken without reference to the evidence in the cause and the agreement of counsel appended to the bill of exceptions, would seem to intimate that the board adopted the report of the engineer as made, whereas the truth is they amended and corrected it; thus showing, if their act is any evidence, that they did not consider themselves bound by his report, as they assumed the power of correcting it. Thus the instruction would have the jury imply the assent of the company to the engineer's report from an act which shows their dissent from it. As has been observed, it was natural, under the circumstances, that the board should call upon their engineer for information as to the deficiencies in the construction of the road; and because they did so, and afterwards adopted his report with corrections as a basis for an adjustment of the controversy, it is not easy to see how such conduct furnishes any evidence that they assented to a contract or proposition made to the engineer relative to the ascertainment of the deficiencies in the work, when that conduct shows that they did not assent to it.

What has been previously stated applies to the last portion of the work. Those portions of the work which were received under resolutions of the board, and the deficiencies of which were agreed upon and estimated by the parties, can not be re-examined unless fraud in its execution is alleged and proved. If the work was fraudulently executed or its defects in any manner disguised or concealed, the plaintiff is liable for the consequences of such fraud or concealment, although he had no knowledge of it. He is responsible for the good conduct of those employed by him to do the work, and, however he may stand in the forum of conscience, he can not avoid a responsibility incurred by his servants or agents; as the injury is the same to the company as if it had been done by the principal himself. As by his employment of unworthy agents he has been the cause of the injury, it is nothing but justice that he should be responsible for it.

We do not consider that, under the circumstances, much if

any importance should be attached to the fact that the road was used or occupied by the company. There is no attempt to throw the work on the contractor and thereby escape payment for it. It seems to be admitted on all sides that there was not a compliance with the contract, and the only question is, how much shall be deducted from the contract price for the defects in the execution of the work. A large sum had been disbursed in the building of the road, and it was natural that the company should endeavor to be reimbursed as speedily as possible. The record shows that the defendant had been garnished for the debts of the contractor, and it might have been unavailing had resort been made to him for indemnity for his violation of his contract. The company seems always to have been willing that the contractor should have the full value of his labor estimated according to the terms of the contract. After the time for the performance of the agreement had elapsed, it was proposed to give him time to complete it, but he declined the proposition.

The other judges concurring, the judgment will be reversed and the cause remanded.