The City of Logansport *v.* Justice.

———•◆•———

No. 7435.

THE CITY OF LOGANSPORT *v.* JUSTICE.

CITIES AND TOWNS.—*Notice to Councilman of Defects in Street or Bridge.*— Under the statutes of this State, notice to a councilman of a city, of the dangerous condition of a street or bridge within the city, is notice to the city. ELLIOTT, J., dissents.

SAME.—*Agents.*—*Notice.*—In this State, for the purpose of receiving notice, councilmen of a city are at all times the agents of the city.

SAME.—*Continuance of Defective Condition of Bridge.*—*Presumption of Notice.*—Notice to a city of the defective condition of a bridge therein will be presumed from the continuance of such condition a sufficient length of time for the officers of such city to have had an opportunity to learn of such defect.

SAME.—*Diligence in Making Repairs.*—A city is responsible only for reasonable diligence to repair defects in its streets or bridges, or to prevent accidents therefrom after such defects are known, but where, on failure, after notice in due time to have made repairs of such defects, an injury occurs therefrom, the city is liable.

SAME.—*Measure of Damages.*—*Loss of Business.*—*Evidence.*—In an action by a physician against a city, to recover damages for a personal injury received on account of a defective bridge, proof of his professional

earnings before and after the injury is admissible in evidence under a special allegation of damages on account of loss of business, not as a basis or measure of damages, but as aiding the jury in estimating the compensation to be awarded.

SAME.— *Instruction.—Assumption of Fact.*— An instruction that, "If the bridge in question, being within the city, was defective," etc., does not assume that the bridge was within the city.

From the Cass Circuit Court.

*M. Winfield*, for appellant.

*D. C. Justice*, for appellee.

WOODS, J.—This was an action by the appellee, against the appellant, to recover damages for an alleged injury to the plaintiff, received in driving over a bridge across a certain ditch in the city, which, it was alleged, the city had negli- gently suffered to be and remain out of repair.

The complaint, having stated the plaintiff's profession to be that of a physician and surgeon, and the injury, alleges "that before and at that time his professional services, as a physician and surgeon, were of the value of $500 per month, and he was realizing and earning that sum therefrom ; and by reason of the injury to his body, and his great pain aforesaid, he was wholly incapacitated, and rendered unfit and unable to practice his profession, and compelled to remain within doors, and lost, for that time, his aforesaid practice and the emoluments thereof, for a period of eight months, to his damage of four thousand dollars," etc.

Issue, trial, verdict and judgment for the plaintiff for the sum of $1,133.

The questions discussed by counsel for the appellant arise on the motion, made and overruled, for a new trial; and they will be considered in the order presented by counsel.

The court gave the following instruction upon the subject of notice to the city of the defective condition of the bridge, viz. : "Notice to the councilmen or street commis- sioner is notice to the city."

The City of Logansport v. Justice.

It is insisted that this instruction is wrong in so much as it declares that notice to the councilmen is notice to the city. The argument is, that councilmen, regarded as individuals and not as a collective body, or as a committee of the collective body, have no powers over, and are charged with no duties with respect to, the streets of the city, and therefore that notice to them of a defect in a street does not affect the city. The argument appears not to be destitute of foundation; and, if the premise be conceded, the conclusion must probably follow. It may be observed, however, that the argument proceeds upon a phraseology somewhat different from that of the instruction. The latter says "notice to the councilmen," which naturally, if not necessarily, means all of them; not some, or any of them, as is assumed in the argument. It is not an apt mode of expression, to say "the councilmen," if reference is intended to the members of the council in their individual capacities and relations; and embracing, as it naturally does, all the members, the phrase is not inapt, when a reference to the collective body is intended. Their coming or being all together, except in connection with their official duties, would be an unusual and improbable occurrence; and a reference to them as "the councilmen," in the instruction, may well be said to have meant the official body of councilmen. Properly understood, therefore, the instruction was not erroneous upon the theory of law advanced by the counsel; and, if he was apprehensive of a mistaken understanding of it, he should have moved for such explicit qualification or further instruction as was deemed necessary.

But suppose the instruction be interpreted as meaning the councilmen as such, but not as assembled in council; are they, or are they not, charged with any duty in reference to the streets of the city? Among the powers expressly conferred on the common council, as a body, is to "have exclusive power over the streets, highways, alleys, and bridges,

within such city, * * * * and to make repairs thereto.'" Sec. 61, act of March 14th, 1867; 1 R. S. 1876, p. 300. This power, as well as many others conferred in the same act, greatly concerns and affects the public welfare as well as private rights; and, to the end that public and private interests may not suffer from a failure to exercise, or from negligence in the exercise of, such powers, the law gives an injured party a remedy in damages against the city itself. To the same end it is provided in the law, that "The common council shall hold stated meetings at least twice in each month, and the mayor, or any five councilmen may call special meetings." Sec. 47 of act of March 14th, 1867. The provision for calling special meetings of the council was doubtless enacted in consideration of the fact, demonstrated by experience, that emergencies will arise, or may be reasonably expected to occur, requiring the early or immediate action of the council, and when, to await the time for a regular meeting, might entail disaster and loss, or at least the hazard of loss and liability, on the city. The power to call the council together in special meetings may as well, and perhaps more frequently, be exercised in reference to the condition of the streets and bridges within the city, as any other subject of control by the council. The power to call such meetings, by necessary implication, imposes the duty to make the call in proper cases. It is true that five councilmen are required to concur in the call, but the duty rests on each who has notice of the emergency, for it is manifest that the refusal of any one of five who know of the necessity of a meeting, to join the other four in a call therefor, would not excuse the city from liability arising out of the failure to call such meeting. The duty growing out of the power to call special meetings, in proper cases, being, therefore, an individual duty imposed on each member of the council, it is incumbent on each, when informed of an emergency which requires the action of the common

council, to notify the mayor or other councilmen, who may join in the necessary call; and, if he negligently fails to perform this duty, the city is liable to any one who may suffer injury thereby.

We conclude, therefore, that notice to a councilman of a city, of the dangerous condition of a street or bridge within the city limits, is notice to the city. Our conclusion is fortified by a reference to the provisions of the law concerning the duties and powers of the street commissioner, as found in section 28 of the act of March 14th, 1867, already referred to, namely:

"Sec. 28. It shall be the duty of the street commissioner, under the direction of the common council, to superintend the streets, alleys, market places, landings, the construction, repairing, cleaning and lighting the same, the building of sewers and drains, the purchase of the necessary implements of labor and the employment of laborers, and shall perform all the other duties incident to his office: *Provided*, He shall have no power to contract for any debt or liability against the city, unless specially authorized so to do by an order, resolution, or ordinance of the common council, made in accordance with the powers vested in such council by this act."

But, if the powers of the street commissioner were more ample and free from restriction, it would still be true, under the other provisions of the law to which we have adverted, that the councilmen have power, and a consequent duty, in reference to the streets of the city; and, this conceded, nothing is wanting to support the conclusion already announced. The wisdom of the rule, which makes notice to councilmen notice to the city, is shown by a consideration of the fact that councilmen are elected from the different wards of the city, and each is likely to observe, or at least soon to learn of, the dangerous condition of any of the streets or bridges in his ward or neighborhood, and by prompt action to secure the necessary repairs or protection against danger.

The City of Logansport v. Justice.

In the dissenting opinion it is affirmed to be the universal rule, "that the governing officers of a corporation, such as directors and trustees, must, in order to bind the corporation, act as a collective body, and in regular and lawful session," and that this rule applies with peculiar force to the officers of municipal corporations "discharging duties for the benefit of the public, and not for the promotion of private interests."

This principle is doubtless true and applicable to all subjects concerning which the council must act, if at all, as a body, but it does not seem to us to apply to the subject of notice. Notice to the street commissioner, or to the mayor, is not notice to the council itself, but is notice to the city, on which the council must act, in order to save the city from liability; and the application of the rule contended for would relieve the council from the responsibility of acting on such notice, as well as upon notice to an individual member of the council. The street commissioner and mayor themselves can do nothing to repair a street or broken bridge, if it requires the incurring of any debt or liability against the city, and yet notice to them is sufficient. The mayor can discharge his duty by calling the council together for the purpose of enabling it to take steps to have the street made good. But suppose the councilmen ignore the call of the mayor, and neglect to assemble in lawful session; the repairs are not made, and some one is injured. The city is held liable, but why? Not on account of any fault of the mayor or street commissioner; they have each done their whole duty, under the powers conferred on them; not on account of any negligence of the common council, because that has not been in session, and could not act. But, unless there has been fault somewhere and in somebody who represented the city, there can be no liability at all. It is clear that the only fault is in the individual councilmen, in failing to assemble, and for that fault the city is made responsible.

If the doctrine is enforced, that the city is not liable for the conduct of councilmen, but only on account of the action of the council in lawful session, then notice to all the councilmen, though assembled together in the council hall, would not be good if given just before the commencement or just after the close of the session. Such a proposition does not command the assent of conscience and reason, and can hardly be accepted as the rule of law. For the purpose of receiving notice, the councilmen of a city, under our statute, are at all times the agents of the city, and within a reasonable time after receipt of notice, must move in the discharge of the duty so imposed upon them. It may be said that the presumption is that the council has furnished, and put at the disposal of the ministerial officers, the funds necessary to meet the expenses of emergencies, but presumptions of such a nature are by no means always true, and the rules of law must be applicable in all cases, and wherein the presumptions fail as well as when they hold good. It may be enough to guard against danger, without making repairs, and the ministerial officers in most cases may be bound and able to provide the necessary safeguards; but cases are supposable when they cannot do so. The mayor and street commissioner may be absent from the city, or sick, or dead; or they may have resigned; and in such cases, unless notice to the councilmen be good, there could be no notice at all. In such cases, the public interests imperatively require that the councilmen shall represent the city; and, it being conceded that notice to the councilmen must be good in some cases, there can be no good reason for not holding it good in all cases.

Objection is made to the second instruction given upon request of the plaintiff because it assumes the existence of a controverted fact, namely, that the bridge in question was within the city. The language of the instruction excepted to is as follows: "If the bridge in question, being within

the city, was defective," etc.   We do not regard the instruction as assuming the fact stated.   The sentence is hypothetical not only in subject and predicate, but in its subordinate or qualifying clauses as well.   See *Morgan* v. *Wattles*, 69 Ind. 260.   If this were doubtful, it is clear, upon all the instructions given, the jury was not misled in this respect.

Further objection is made to this instruction because of the clause saying that if "this" (the condition of the bridge) "had continued for several days or weeks, then the city will be presumed to have notice such as will bind her in that regard."   In answer to an interrogatory, the jury found the fact to be that the bridge had been in the condition it was in at the time the plaintiff was injured for "about two weeks," and, in answer to another interrogatory, it was found that there had been "negligence on the part of the city, or of her street commissioner, at and before the accident, to keep the bridge in repair, when it was discovered to be out of repair." Under any ordinary circumstances, and the evidence discloses nothing extraordinary, the fact of a bridge having been out of repair and in a dangerous condition so long would warrant an inference of knowledge on the part of the officers of the city, or some of them having duties in reference thereto, of the fact.   See *Todd* v. *The City of Troy*, 61 N. Y. 506.   If, therefore, not strictly correct, it is manifest that the instruction did the appellant no harm ; and, under secs. 101 and 580 of the code, we are forbidden to reverse a case when it appears that the merits of the cause have been fairly tried in the court below.   These considerations dispose, too, of the objection made to the first instruction, in reference to the time of the notice to the city.   The rule no doubt is, as claimed, that the city "is responsible only for a reasonable diligence to repair the defect or prevent accidents after the unsafe condition of the street is known." Dillon Municipal Corporations, sec. 790.   But from the

answers to interrogatories, as well as upon the evidence, it is clear that the city had notice in due time to have made repair of the bridge in question.

It is also claimed that the court erred in permitting the plaintiff to make proof concerning his professional earnings before his injury. Summing up on this topic, the counsel for the appellant says:

"In substance, the plaintiff is permitted to prove what his professional earnings had been per year for five years, and how much his business had fallen off during six months succeeding the injury. This was permitted to go to the jury under an allegation in the complaint, that the plaintiff was damaged in his business, and asking a recovery for the same. The damages are for a personal injury. This evidence was admissible in estimating the value of time lost, but not as a basis of damages. Taken in connection with the demand of the complaint and the instruction of the court, the evidence was clearly admitted as a basis of damages. It has been held that similar evidence is competent, not as a basis of damages, but as a guide to the jury, to aid them in the exercise of their discretion.

"The following are the authorities in support of this proposition: *Allison* v. *Chandler*, 11 Mich. 542; *Taylor* v. *Dustin*, 43 N. H. 493; *Simmons* v. *Brown*, 5 R. I. 299; *Wade* v. *Leroy*, 20 How. 34; *Lincoln* v. *The Saratoga, etc., R. R. Co.*, 23 Wend. 425; *The New Jersey Ex. Co.* v. *Nichols*, 33 N. J. 434; *Ballou* v. *Farnum*, 11 Allen, 73."

In addition to these cases cited by counsel, see in point *The City of Indianapolis* v. *Gaston*, 58 Ind. 224; *The Town of Elkhart* v. *Ritter*, 66 Ind. 136.

We have no doubt the testimony was admissible, and, indeed, the proposition of counsel for the appellant concedes as much. It did not furnish the measure of the damages to which the plaintiff was entitled, but the jury had a right to consider it in estimating the compensation to be awarded;

and it is evident from the amount of the verdict, that this is the use they made of it. It is enough, however, to meet the exception to its introduction, that the evidence was admissible for any purpose. If the court gave any instruction authorizing a misuse of the evidence, exception should have been saved to the instruction. It has not been pointed out wherein the instructions were wrong in this direction.

We find no available error in the record.

Judgment affirmed, with costs.

## DISSENTING OPINION.

ELLIOTT, J.—In my judgment, notice to an individual councilman is not notice to a municipal corporation, unless the councilman was at the time engaged in the business of the municipality.

The importance of the question, considered as an abstract matter of law, as well as the consequences which must necessarily flow from the enforcement of the rule declared in the opinion of the majority, must stand as my apology for a somewhat lengthy statement of the reasons which impel me to refuse assent to the prevailing opinion.

It is necessary, at the outset, to determine the relations which members of the common council sustain to the corporation. Municipal corporations are political organizations instituted for public and governmental purposes. The whole interest is in the public; neither corporators nor officers have any private interest either in corporate property or corporate affairs. Councilmen are *quasi* public officers, with powers, duties and liabilities very closely resembling those of public officers of the State. *Newman* v. *Sylvester*, 42 Ind. 106. The common council are the governing legislative officers, and possess, in some degree, the attributes of local legislative sovereignty; but no body of municipal officers constitutes the corporation, nor do all the officers combined constitute

the corporation. The inhabitants constitute the body corpo-
rate. Mr. Grant says: "The council" are "the ministers or
agents of the corporation ; but it is to be remarked, that the
council are neither *the* corporation, nor are they in themselves
*a* corporation." Grant Corp. 357. The same doctrine is
declared in *Lowber* v. *The Mayor*, etc., 5 Abb. Pr. 325, and
*Clarke* v. *The City of Rochester*, 24 Barb. 446.

The common council are not general agents ; on the con-
trary, they are special agents with limited statutory powers.
*Johnson* v. *The Common Council*, etc., 16 Ind. 227. Their
powers are defined by statute, and the mode of exercise is
explicitly prescribed.

It is an elementary principle, that where powers are con-
ferred upon a corporation, public or private, and the mode
of exercise is prescribed, the powers conferred must be exer-
cised in the prescribed mode. Our general law for the in-
corporation of cities does prescribe the mode in which the
powers devolved upon the common councils of the cities of
the State shall be exercised.

It can not be doubted that our statute requires that all
official acts of the common council shall be done by the
members when convened in regular or special session. This
is, indeed, the general rule, irrespective of express statutory
enactments. It must follow from the familiar principles re-
ferred to, that the councilmen act for and represent the city
only when sitting in lawful session. If it be granted that
councilmen represent the municipality only when engaged
in the discharge of their duties in the municipal legislature,
then it must also be conceded that an individual councilman
does not at other times and places act as the agent of the
corporation. It seems clear to my mind, that the minor
proposition is necessarily bound up and involved in the prin-
cipal one.

I may be pardoned, I trust, for referring to some consid-
erations which support the proposition, that councilmen are

agents only when engaged in discharging the functions of their office. Less than a quorum of the council can do no valid act. *The City of Logansport* v. *Legg*, 20 Ind. 315 ; *The State* v. *Wilkesville Township*, 20 Ohio St. 288. A record of proceedings must be kept and signed in the manner provided by statute. *The South School District* v. *Blakeslee*, 13 Conn. 227 ; *Denning* v. *Roome*, 6 Wend. 651 ; *Moser* v. *White*, 29 Mich. 59. Their modes of procedure are analogous to and governed by the rules applicable to legislative bodies. Dillon Munic. Corp., sec. 288. Meetings must be held at the lawfully designated times. Powers of the council can not be delegated to individual members. *Whyte* v. *The Mayor, etc.*, 2 Swan, 364 ; *Day* v. *Green*, 4 Cush. 433 ; *Smith* v. *Morse*, 2 Cal. 524.

These examples are sufficient to show, although illustrations might be multiplied, that the council as a collective body are the agents, and not individual councilmen at their respective homes and places of business, scattered about the city.

Turning for a moment to the law governing private corporations, we shall find strong confirmation of the general doctrine affirmed in this opinion. One director can not bind the corporation, by admissions or contracts. It requires the vote of a majority of all the directors, in regular and lawful session, to impose binding obligations upon the corporation. *Price* v. *The Grand Rapids, etc., R. R. Co.*, 13 Ind. 58 ; *The Brooklyn Gravel Road Co.* v. *Slaughter*, 33 Ind. 185. A contract made by a majority of directors, at an informal and irregular meeting, imposes no liability upon the corporation. *Barcus* v. *Hannibal, etc., Co.*, 26 Mo. 102 ; *Crum* v. *The Bangor House Proprietary*, 12 Me. 354. Without prolonging this discussion by citation of cases, which, indeed, is not necessary, as the principle is so firmly settled and well known, I affirm that the universal rule is, that the governing officers of a corporation, such as directors and trustees, must, in order to bind

the corporation, act as a collective body and in regular and lawful session. If this be the rule applicable to corporations, where directors and trustees have direct pecuniary interests, it certainly must be so in cases where officers of municipal corporations are discharging duties for the benefit of the public, and not for the promotion of private interests.

Fundamental principles of the law are the same, whether the corporation whose interests and rights are under discussion is a public or a private one. The general principle, as settled by a long line of decisions, is, that notice to an individual director of a private corporation is not notice to the corporation, unless the director was, at the time, engaged in the transaction of corporate business. Among these cases are: *United States Ins. Co.* v. *Shriver*, 3 Md. Ch. 381; *Washington Bank* v. *Lewis*, 22 Pick. 24; *Farmers and Citizens' Bank* v. *Payne*, 25 Conn. 444; *Farrel Foundry* v. *Dart*, 26 Conn. 376; *La Farge F. Ins. Co.* v. *Bell*, 22 Barb. 54; *Fulton Bank* v. *New York, etc., Co.*, 4 Paige, 127; *Louisiana State Bank* v. *Senecal*, 13 La. 525; *Powles* v. *Page*, 3 C. B. 16; *Edwards* v. *The Grand Junction R. W. Co.*, 1 Myl. & C. 650; *Lancey* v. *Bryant*, 30 Me. 466; *Soper* v. *Buffalo, etc., R. R. Co.*, 19 Barb. 310; *Loomis* v. *Eagle Bank*, 1 Disney, 285; *Pemigewassett Bank* v. *Rogers*, 18 N. H. 255.

The principle, that notice to a corporate officer is not notice to the corporation, unless the officer was, at the time of the notice, engaged in some corporate business, applies as well to public as to private corporations. There is, indeed, ger reason for the rule in cases of public corporations. I vate corporations are organized for selfish purposes, and officers are controlled by motives of self-interest; whereas public corporations are organized for governmental purposes, and the officers are vested with public trusts, and are not influenced by pecuniary or personal interest. It would violate all just principles of law and equity, to impose upon

public corporations a broader responsibility for the acts of their officers than that devolved upon private corporations.

Recurring again to fundamental principles, we find that notice to an agent is sufficient only in cases where the admissions of the agent would bind the principal. This is incontestably so with respect to the officers or agents of private corporations. Dr. Wharton says: "Wherever an officer of a corporation can bind the corporation by his acts, there notice to him will be notice to the corporation." Wharton Agency, etc., sec. 184. Story Agency (8th ed.), sec. 140c. This doctrine logically follows from the cases cited, and is the only one which can be harmonized with settled principles. It is certain that an agent's admissions bind his principal only when made while engaged in transacting the business of the principal. Accepting as correct these fundamental principles, it follows, as an unavoidable logical conclusion, that notice to an individual councilman, not at the time engaged in the performance of an official duty, is not notice to the municipality.

The conclusion just expressed is that reached by one of the soundest lawyers and thinkers of our day. Judge DILLON, speaking of the declarations of municipal officers, says: "To render such declarations and admissions evidence, they must accompany acts, which acts must be of a nature to bind the corporate body." Dillon Municipal Corporations, 3d ed., sec. 237, note 1  The opinion of the eminent author quoted is sustained by many authorities. See authorities cited in note to sec. 237, and in note to sec. 305. There are other cases sustaining the doctrine here maintained. In the case of *Bush* v. *Trustees of Geneva*, 3 T. & C., N. Y. 409, it was held that notice to two of several town trustees of a defect in a street was not sufficient, and in *Peach* v. *The City of Utica*, 10 Hun, 477, it was decided that notice to an alderman was not notice to a corporation.

Cases decided by the Supreme Court of Maine are cited

by the appellee as sustaining the doctrine sanctioned by the majority opinion. These cases go much further; so far, indeed, as to carry their own condemnation upon their faces, for they hold that notice to an inhabitant is notice to the town. It is true that some of these cases speak of "a principal," or "the principal," inhabitants, but this qualification is of little practical force where all inhabitants are, in theory if not in fact, sovereigns and equals. It would be, to say the least, a very hard and ungracious task for a court to undertake to sift the inhabitants of the smallest city, and single out the principal ones. Aside from this, the doctrine, if applied to such cities as New York, Philadelphia, Chicago or Boston, would work the rankest injustice. It would have the same effect even in cities such as Logansport ; for it would be inequitable to hold that notice to one, ten or twenty, out of twelve thousand inhabitants, should fasten a burden upon all the other corporators. I know that the majority opinion sanctions no such doctrine, but it does, as it seems to me, depart from settled principles, and when once this is done there is no longer certainty, for we are drifting without guides or restraints, and may at last reach some such erroneous result as that to which the departure from settled principles has carried the courts of our sister State.

The underlying principle of agency is, that the agent derives his authority from the voluntary appointment of the person whom he represents. No one councilman is appointed by the municipality, and, therefore, no one councilman can be deemed the agent of the corporation. All the councilmen are so appointed, because all the councilmen, when assembled in legal session, are the chosen or appointed agents of the whole number of corporators. Individual councilmen are selected by the corporators of particular localities or wards, and it is only when acting in conjunction with councilmen chosen by other wards or localities, that they can be correctly said to be agents of the city. The

corporators of the municipality ought not to be bound by the acts or omissions of one man, with whose appointment they have nothing at all to do. If the converse of the proposition which this opinion endeavors to sustain be true, then it would follow that a councilman from ward one could bind all the inhabitants, by the receipt of notice of a defect in a street in ward twenty, although ward twenty was five or twenty miles distant from ward one. It would also follow, I suppose, if the converse of the proposition named be correct, that notice to the most dissolute and unworthy member of the common council, elected from a single ward, would impose a burden upon the inhabitants of a score of other wards although they had no part in selecting him. Other considerations might readily be suggested in support of the proposition that the common council, as a collective body, are the agents of the city, and that individual councilmen are not, but this discussion has been already too much prolonged, and I shall neither suggest nor discuss them.

Councilmen are not in the continuous employment of the city. Their powers and duties do not require them to devote all their time to the corporate business. There is not the slightest resemblance between the authority of a councilman and that of a general agent intrusted with the general management of his principal's affairs. Nor is there any similarity between the authority and duty of a councilman and that of such officers as the mayor, street commissioner, treasurer or clerk, who are constantly and uninterruptedly in office for the terms for which they were elected, and whose official duties are regular and continuous. The common council must meet in regular session within ten days after their election. Section 46, general act. They must fix regular times for meetings. Stated meetings must be held twice in each month. A majority of the members constitute a quorum for the transaction of business. Section 47.

Without multiplying citations, it may, as I think, be safely

affirmed that our statute means that individual councilmen shall be deemed agents of the city only when engaged in some act expressly delegated to them, or when sitting as members of the council convened in lawful session. This conclusion is strengthened by the fact that other officers, such as the mayor, marshal and street commissioner, are continuously in office, charged with ministerial duties; while those of the councilmen are almost exclusively legislative.

It may be broadly granted that ministerial officers have no right to appropriate the money of the corporation to the repair of streets, and the force of the argument be in no respect impaired. The presumption is, that the municipal legislature has made and placed within the reach of ministerial officers proper appropriations for guarding and protecting dangerous defects. It is not to be presumed that the councilmen have been derelict in this respect; upon the contrary, the presumption is that they have done their duty in this, as in all other official matters.

Municipal corporations are not, as a general rule, bound to repair or improve; there is no such absolute duty resting upon them; but they are bound to make safe dangerous places in the highways. This may be done by placing about the dangerous places barricades or warnings and signals of danger; there is no imperative duty to rebuild or repair. A ministerial officer may well be charged with the duty of placing about a dangerous place the proper barricades or warnings, but one would hardly ascribe such a duty to a legislator. Notice, to be effective, should be given to the officer charged with the specific ministerial duty and invested with the requisite authority, and not to officers whose duties are never ministerial in the true sense, but always legislative.

The salary or compensation which the statute awards councilmen shows very clearly that it was not intended that they should be general agents, continuously representing the city. The compensation is explicitly limited to an annual salary

not exceeding one hundred and fifty dollars per annum, and another provision prohibits members of council from directly or indirectly receiving any other compensation. Independently of such a provision, they could not rightfully receive any other compensation than that expressly provided by statute. *Smith* v. *City of Albany*, 61 N. Y. 444. It will hardly be contended that a man of average business capacity, or ordinary intelligence, could be expected to give all his time and attention to corporate affairs for such a paltry compensation as that prescribed by our statute. If councilmen are not general agents, they can not bind the corporation by admissions, nor will notice to them be effectual as against the municipality. It is well settled that notice to a special agent is not notice to the principal, unless the agent was at the time engaged in conducting the transaction in behalf of his principal. Wharton Evidence, sec. 1,175. Notice to individual councilmen, engaged about their own affairs upon the street, or in the shop, store or home, can not, without doing violence to this settled principle, be deemed notice to the corporation of whose legislative body they are members.

If councilmen are the general agents of the city, charged with the duty of receiving and acting upon notice of defects in public highways, then, for culpable negligence in failing to perform that duty, they are liable to their principal. It can not be assumed that there exists a duty to act upon notice, without also assuming that for a wrongful refusal, or a negligent failure to act, there is a corresponding burden of liability for injury resulting from such wrongful refusal or negligent omission. I can not bring my mind to the conclusion that, for the pitiful compensation provided, the Legislature ever intended there should be any such duty, or any such correlative burden. It can not be successfully asserted that there is such duty, but no burden. It is a vain thing to imagine a duty without a liability, save only in matters of a judicial nature. Let it once be understood that.

councilmen owe such a duty, accompanied by its inseparable burden, and men of character and responsibility will shun the office, and the government of our cities will fall into the hands of the unworthy and irresponsible, reckless alike of duty and liability. The office of councilman should not be incumbered with any such grievous burdens, for it is evidently intended to be one of honor rather than of profit. Possibly, I grant, little of either in most cases.

It seems to me that undue importance is attached to the provision of the statute authorizing five councilmen to call a special meeting. This provision superadds no powers, creates no additional duties. It merely confers authority to call such meetings; for without it there would be no such power. It does not broaden the authority of the agents, nor does it increase their liability. This isolated provision ought not, I submit with all possible deference and respect, to be allowed to overthrow the whole body of the statute and strike down long and firmly settled principles. It was never meant to have any such effect. It was not intended to require individual councilmen to carry into workshop, store, office or home, their representative character. The burden imposed by such a construction would be almost as annoying to the ordinary man of business as was the "Old Man of the Sea" to Sinbad the Sailor.

There is no reason growing out of public policy requiring such a rule as that which the court has adopted. Persons who traverse the streets are well protected. Express notice to the chief executive officer, or to the ministerial officer or agent having direct charge of the streets, is sufficient to charge the municipality. Not only this, but if the defect has existed for such a length of time as that the corporation ought to have taken notice, it will be held to have had notice. Even more than this, corporate authorities are charged with notice of the probability of material, out of which streets, bridges and crossings are constructed, to become unsafe by exposure,

and must take measures to guard against injury from such. cause. Surely these rules guard sufficiently the rights of persons who travel upon the public highways, and to add. other burdens will be to oppress our public corporations, the corporators of which receive no personal interest whatever from the rights and powers conferred by the incorporating act.

Notice to councilmen, granting for argument's sake the correctness of the theory upon which the majority opinion proceeds, must undeniably be reasonable notice. Reasonable notice to a councilman of a defect, and reasonable time for the council as a collective body to act, would, of course, be allowed. If this proposition be correct, then the instruction in this case is palpably erroneous, because it utterly ignores the element of the reasonableness of the notice.

I am not, however, for reversal upon this narrow ground, but upon the broader and more important one stated in the preceding pages.