No. 9427.

## The City of Washington v. Small.

CITY.—*Street.*—*Sidewalk.*—*Negligence.*— *Pleading.*—A complaint against a city to recover for an injury in consequence of a defective sidewalk, averring that the sidewalk had been negligently left out of repair and dangerous for two months, of which the city had notice; that when

walked upon it tipped, because its support had been washed away, in consequence of which the plaintiff, in passing, without fault, and being ignorant of danger, slipped and fell, etc., sufficiently shows care by the the plaintiff and negligence by the defendant.

SAME.—*Degree of Vigilance.*—A city is bound to use active vigilance to discover and repair defects in its streets and sidewalks, while the traveller must use ordinary care to avoid injury.

NEW TRIAL.—*Newly-Discovered Evidence.*—*Bill of Exceptions.*—*Affidavits.*— Affidavits showing newly-discovered evidence in support of a motion for a new trial, are no part of the record unless made so by bill of exceptions.

From the Daviess Circuit Court.

*J. W. Ogdon,* ——*Tharp, J. H. O'Neall* and *D. J. Hefron,* for appellant.

*J. T. Pierce, W. R. Gardiner* and *S. H. Taylor,* for appellee.

MORRIS, C.—The appellee sued the appellant to recover damages for an injury caused by a fall on the sidewalk of the city, alleged to have been caused by a defect in the sidewalk. The complaint consisted of three paragraphs. A demurrer was sustained to the first and second paragraphs and overruled to the third. The third paragraph is, in substance, as follows:

The defendant is, and for ten years last past has been, a municipal corporation, incorporated under the general laws of the State of Indiana; on the 27th day of February, 1880, there was, and is, in said city of Washington, a certain street, called New street, running east and west, from Will street to East Eleventh street, in Turner's addition to said city; there was then, and now is, a planked sidewalk running along the north side of said street, forming part of said street, which sidewalk the appellant was bound to keep in repair; that, on said 27th day of February, 1880, and for more than two months prior thereto, said sidewalk was and had been greatly out of repair, and dangerous for pedestrians to walk upon; that that part of it within the corporate limits of said city, where the injury herein named occurred, by reason of a ditch dug by the appellant along the side of said sidewalk, and the

wear and wash of the soil along the same, and the removal of props and supports from under the south side of said planked sidewalk, it became tipped and slanting upon the south side thereof, and would sink and yield for want of support under the weight of persons walking upon the south side, and. thereby trip passengers; that the appellant negligently suffered said sidewalk along the travelled part thereof to be and remain in said condition and out of repair, and dangerous to pedestrians, for two months at and before said time, although it had notice thereof, and that said sidewalk was out of repair; that appellee, on said 27th day of February, 1880, while walking along and upon said sidewalk, as she lawfully might, without knowledge of its dangerous and unsafe condition, and with due and proper care, and without fault on her part, but solely because of the defective condition of said sidewalk, slipped and fell on said sidewalk, and thereby severely hurt and bruised her body, and especially her right hip and leg, which by said fall were so torn, twisted and broken that she has lost the use of the same for life, suffered great pain, and been put to great expense, etc.

The appellant answered the third paragraph of the complaint in four paragraphs. The court, on motion of the appellee, rejected the second, third and fourth paragraphs of the answer, to which the appellant excepted. The cause was submitted to a jury for trial, who returned a verdict for the appellee. The appellant moved the court for a new trial. The motion was overruled and final judgment rendered for the appellee.

Errors are assigned as follows:

1. The court below erred in overruling the appellant's demurrer to the third paragraph of the complaint.

2. The court erred in sustaining the appellee's motion to reject the second, third and fourth paragraphs of the appellant's answer.

3. The court erred in overruling the appellant's motion for a new trial.

We think the court did not err in overruling the demurrer to the third paragraph of the complaint. The complaint states that the defective sidewalk was within the corporate limits of the appellant; that it was its duty to keep the sidewalk in repair; that it knowingly suffered the sidewalk to get out of repair and remain so for two months; that the appellant constructed a ditch along the sidewalk, which, with the wash of the soil along the same, and the removal of the support and props under the south side of said plank walk, caused it to become tipped and slanting, and to yield some six or eight inches on the south side under the weight of a person walking upon it; that while walking upon this defective sidewalk, with due care and in ignorance of its defective condition, she, because of said defects, fell and was injured.

The question which the appellant's counsel say they wish to submit is, whether, " if the sidewalk was really out of repair as averred, and for the reasons stated, it is not clear, from a fair interpretation of the complaint, that the defects were so patent and visible to the eye that they might have been discovered by the exercise of ordinary care."

We think, upon the facts stated, it can not be held as a conclusion of law, contrary to the express averments of the complaint, that the appellee necessarily knew, or might, by the exercise of ordinary care, have known, that the supports under the south side of the plank walk had been removed, so that, under the weight of a person walking upon the plank, the south side of the walk would yield and make it unsafe. True, had she inspected the ditch and looked under the walk to see if the props and supports were in proper place and condition, she might have discovered that they had been removed, and from this discovery she might have inferred that, for want of support, the walk would yield under the weight of passengers and become tipped and dangerous. But the law imposed no such duty of inspection upon the appellee. She had a right to act upon the assumption that the sidewalk was in safe con-

dition. She had a right to assume that the appellant had discharged its duty to the public, and that the sidewalk was safe. True, if she could see that it was in an unsafe condition and dangerous, and, with knowledge of its defective condition, ventured upon it, she must be held to have assumed the risk. But she avers that she did not know that the sidewalk was unsafe. We can not say that, as matter of law, she must have known the contrary of what she avers.

It is said that it is not averred that the appellee did not know that the ditch had been dug, nor that the props under the south side of the walk had been removed. She avers that she had no knowledge of the dangerous condition of the sidewalk, and that she was without fault. If she was in fact ignorant of the defect, and was without fault, she must have exercised reasonable care. The averment that she was injured without fault on her part was equivalent to averring that she could not, by reasonable diligence, have known that the supports under the walk had been removed. This was sufficient. *Town of Salem* v. *Goller*, 76 Ind. 291 ; *Town of Elkhart* v. *Ritter*, 66 Ind. 136 ; *City of Fort Wayne* v. *De Witt*, 47 Ind. 391.

Nothing is said in the appellant's brief in support of the second error assigned. The alleged error is properly waived, as the matters set forth in the rejected paragraphs were admissible in evidence under the general denial.

The grounds for a new trial are that the verdict is not supported by sufficient evidence, and is contrary to law, because the damages are excessive, and because of newly discovered evidence.

If there was any evidence given in the cause which legally tended to support the verdict of the jury, this court will not disturb it on the ground that it is not sustained by sufficient evidence. *Fort Wayne, etc., R. R. Co.* v. *Husselman*, 65 Ind. 73 ; *Abshire* v. *Williams*, 76 Ind. 97.

The appellee testified that she fell upon the sidewalk; that she was injured; that she did not know that it was dangerous and out of repair; that her fall was caused by the tipping of

the sidewalk to the south ; that there was a fence on the north of and adjoining the sidewalk ; that it sunk when walked upon much less on the side next to the fence than it did on the south side.

The appellee testified that she had passed over the sidewalk the day before she received the injury complained of, and that she had, some time prior to that, passed over it frequently. Several witnesses, officers and employees of the appellant, testified that the sidewalk had been out of repair, but that, before the accident complained of occurred, it had been repaired.

Daniel Rafferty testified that he repaired the sidewalk in January or February, 1880 ; that the dirt had washed out from under the south side of the walk, so that it slanted to the south ; that the walk was a good walk, made of oak plank ; that he repaired it by putting railroad ties under the plank ; that when he repaired the sidewalk it was two or three inches lower on the outside than on the inside, and would sink about three inches more. The witness does not state whether he repaired the walk before or after the appellee was hurt, but it appears from the testimony of other witnesses that it was after the accident. Robert Gebner, who assisted in making the repairs, says it was in March, 1880, and then testified that the walk slanted and swagged about five inches to the south.

John Guting testified that he was, in February, 1880, a councilman of the city ; that he lived three lots from New street, and occasionally passed over the sidewalk, and frequently over that part where the appellee was hurt, and never noticed it in bad condition ; that no one would notice the bad condition of the sidewalk unless they stepped on it ; then it would give way and the outside would drop lower than the inside.

John Kamade testified that he lived on New street ; that the sidewalk was in bad condition for the length of three planks, which were about ten feet each ; that the planks were in bad order by slanting from the inside to the outside about six inches ; when walked upon the plank would move out to

the south and sink at the outside two or three inches more than on the inside; that at the time the appellee was hurt, one could not get round the defective sidewalk without crossing the street through the mud; that the planks slanted about four inches without any one on them, but if one got on the walk, five or six inches; a person of ordinary observation could see that the sidewalk was out of repair and dangerous.

Mrs. Cool testified to the condition of the appellee, who was her mother, and to the condition of the sidewalk. She says the walk did not slant much till one got on it.

Ellen Kamade testified that she lived near the sidewalk, and that it was unsafe; that it would sink on the south side when walked upon; that both sides of the walk would yield when walked upon, but that it would sink towards the street; that the sidewalk was repaired soon after the appellee was hurt; that Mrs. Cool had fallen on the sidewalk at the same place where the appellee fell; that her little boy had slipped and fell at the same place and on the same day that the appellee fell; that the bad part of the sidewalk extended some two or three yards, and when one stepped on it it went down on the outside as much as six inches, and on the inside three or four.

Mrs. Myers testified that she lived on New street, " and had lived there ever since July, one year ago; " that she came to town on the north side of the street; that there was no other way to come; that she lived half a square from where the appellee fell; that the sidewalk had been in bad condition ever since she lived there; that it was worse when the plaintiff fell, and one would have to walk off the planks because they were so slanting; there were no pieces of timber under the walk then, but there are now; that she passed over the sidewalk two or three times a week; that it was out of repair for the distance of half a square; no one would notice the bad condition of the walk unless they tramped on it; it was impossible for any one to pass over the sidewalk in daylight without noticing its bad condition.

The City of Washington *v.* Small.

It was not incumbent upon the appellee to search for defects in the sidewalk. In passing along and upon it she assumed the risk of such dangers only as were apparent to persons of ordinary observation and of her age and condition. She might have passed over the sidewalk, as she swears she did, the day before she was injured, without becoming aware of its dangerous condition. Had she walked along the north side of the walk and close to the fence, as she probably did, she would not have been likely to notice its unsafe condition. The sidewalk yielded but little, comparatively, on the north side. It was only when the passenger stepped upon the south side that the walk tipped and became dangerous. We can not say, upon the testimony, that the appellee was not, when injured, ignorant of the dangerous condition of the sidewalk, and free from fault. The jury having found in those respects in her favor, we can not disturb the verdict on the ground that she was guilty of negligence. *Waters* v. *Wing,* 59 Pa. St. 211; *City of Indianapolis* v. *Gaston,* 58 Ind. 224.

In the case of *Bloomington* v. *Chamberlain,* recently decided by the Supreme Court of Illinois, and published in 14 Reporter, 744, it was held that the degree of care which the law requires a plaintiff to exercise while passing over a sidewalk, to entitle him to recover for an injury received from its defective condition, is ordinary care, under all the circumstances of the case; that a person passing over a defective sidewalk is not as a matter of course bound to go into the street and pass around it, especially when the defect is merely loose boards, and the walk is not palpably dangerous. Here the sidewalk was clearly out of repair. The appellee had passed over it the day before without injury. It is not clear that the defect was palpable to her.

Does the evidence in the case tend to show that the appellant had notice, actual or constructive, of the defective and dangerous condition of its sidewalk, in time to have repaired it before the appellee was injured? The appellant insists that it had not. If the jury believed, as they had a right to

believe, the testimony of Mrs. Myers, they would be justified
in concluding that the sidewalk, upon which the appellee was
injured, had been out of repair and unsafe for many months
—so long, indeed, as to charge the appellant with constructive
notice of its condition.    It was the duty of the appellant to
keep its sidewalks in repair and reasonably safe for passengers,
and the discharge of this duty obviously and necessarily im-
posed upon its officers reasonable attention to, and active ob-
servation of, its streets and sidewalks.    The reasonably vigi-
lant discharge of their duties in this respect could not fail to
bring to their notice defects in the sidewalk which had ex-
isted for any considerable time.    The law upon this subject
is thus stated in the case of *Todd* v. *City of Troy,* 61 N. Y.
506.    The court says:   "Before the city can be made liable
in any case, it must be shown that it had notice of the bad
condition of the street.    This notice can be either express or
constructive.    By constructive notice is meant such notice as
the law imputes from the circumstances of the case.    It is the
duty of the municipal authorities to exercise an active vigilance
over the streets; to see that they are kept in a reasonably safe
condition for public travel.    They can not fold their arms and
shut their eyes, and say they have no notice.    After a street
has been out of repair, so that the defect has become known
and notorious to those travelling the street, and there has been
full opportunity for the municipality, through its agents
charged with that duty, to learn of its existence and repair it,
the law imputes to it notice and charges it with negligence. *
* Upon the trial there was some evidence that, near the place
where the accident occurred, a conductor had for a long time
come down from a house discharging water upon the sidewalk,
* *   and for some days before the accident there was ice"
across the sidewalk, covered with a sheet of snow, upon which
the plaintiff, etc.    "It was a question for the jury to decide,
whether it was negligence for" the city to let water overflow
and ice to remain there for several days.    "It was also a ques-
tion for the jury to decide whether the existence of this state

of things," which "must have been seen by many persons, ought to have been known to the defendant; in other words, to decide whether the defendant was guilty of negligence in not knowing facts so notorious. Upon these questions there was some evidence, I admit not very strong, and the jury decided them in favor of the plaintiff; and their decision, having been approved" by the trial court, "is conclusive upon us."

In the case before us, some eight witnesses testified to the notoriety of the defect in the sidewalk. One witness testified that the defect had existed for months. It was for the jury to decide whether the appellant should have known of the defect, and whether, if it did not, it was, under the circumstances, guilty of negligence. There was some evidence, to say the least of it, upon those questions, and the jury decided them in favor of the appellee. Their decision has been approved by the court below, and must be held to be conclusive here. The verdict can not, for this reason, be disturbed. *City of Logansport* v. *Justice*, 74 Ind. 378–385 (39 Am. R. 79); *City of Indianapolis* v. *Scott*, 72 Ind. 196.

We can not say that the damages assessed were excessive. According to the evidence the appellee was seriously injured, and her entire recovery from the injury is quite uncertain. It does not appear from the evidence that the jury erred in the assessment of the damages.

The affidavits as to the newly-discovered evidence for which a new trial is asked were filed with the motion for a new trial and are copied into the record as a part of that motion; but they are not made a part of the record by bill of exceptions. We can not, therefore, regard them as a part of the record. *Marks* v. *Jacobs*, 76 Ind. 216; *Fryberger* v. *Perkins*, 66 Ind. 19.

There is no available error in the record.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment below be affirmed, at the costs of the appellant.