Curtis and Wife vs. The Detroit and Milwaukee Railroad Company.

---

CURTIS AND WIFE vs. THE DETROIT AND MILWAUKEE RAILROAD COMPANY.

RAILROAD COMPANY—NEGLIGENCE: *Injury to persons getting aboard train.—Contributory negligence.*

1. Where a complaint against a railroad company for injuries to plaintiff's person, alleges that they were caused by defendant's negligence in starting the train while plaintiff was getting upon it, without giving him sufficient time for that purpose, and defendant alleges that the plaintiff was negligent in getting upon the train when he did, facts showing the company's negligence in other respects than that charged, and not tending *directly* to produce the injury, are admissible in evidence against it, if they tend to show that under the actual circumstances it was not negligent for plaintiff to get upon the train at the time and in the manner proven.

2. The train being a night train with sleeping car attached, it was not error to refuse to instruct the jury that plaintiff's attempting to get aboard *before the sleeping car was abreast of the platform* was negligence *per se*; it not appearing that plaintiff knew the length of the train as compared with the platform, or ought to have assumed that it was intended to bring the sleeping car to that position.

3. An instruction that "if plaintiff, in taking the train, acted as persons of common sense and ordinary prudence and intelligence usually act in like cases, there was no such negligence on his part as will prevent a recovery by him in this action"—*held* not erroneous.

Curtis and Wife vs. The Detroit and Milwaukee Railroad Company.

4. An instruction that if, under the circumstances of this case, the train, in being brought up to the station, came to a stop in such a manner as to induce the belief, on the part of the passengers waiting on the platform, that it had stopped for their reception, and then, when they, acting on this belief, were going aboard, started again without caution or signal given, this would be an act of negligence on the part of the company, whether or not the starting was one of necessity, and whether the stop was an actual or only an apparent one—*held* not erroneous. It was the duty of the company, if the passengers were not to enter the cars under these circumstances, to have some one there to warn and prevent them ; and of the persons in charge of the train, not to start it without previous caution or signal given.

APPEAL from the Circuit Court for *Milwaukee* County.

Action for injuries to the person of *Mrs. Curtis*, from her being thrown from the platform of a car on one of defendant's trains, in consequence of the sudden starting of the train while she was getting upon it. The general facts and circumstances of the case will sufficiently appear from a report of the decision of this court upon a former appeal therein, contained in 23 Wis. 152–160.

The court gave the following instructions at the request of the plaintiffs :

" If the plaintiffs, in taking the train in question, acted as persons of common sense and ordinary prudence and intelligence usually act in like cases, then there was no such negligence on their part as would prevent a recovery by them in this action."

" If the train, in being brought up to the Grand Trunk station, came to a stop in such a manner as to induce the belief, on the part of the passengers in waiting on the platform, that it had stopped for the reception of passengers, and then, when the passengers, acting on this belief, were going aboard, started again without caution or signal given, that would constitute an act of negligence on the part of the defendants ; and it would make no difference whether, in so starting the train, it was intended to proceed to the next station, or merely to locate it more conveniently at the same station."

"If you believe from the evidence that the train had not come to a full stop, but that the stop during which the plaintiffs attempted to go on board, was one which resulted from checking the speed of the train in bringing it up to the station, yet if the passengers were directed to go on board by the men in charge of the train, the plaintiffs had a right to assume that the train was ready for their reception, and cannot be charged with negligence in following that direction, provided the train, where they attempted to enter, was actually still at the time; and if the cars were not ready for the reception of passengers, it was a clear act of negligence in the company's servant to tell them to go on board."

"If the injury to *Mrs. Curtis* was occasioned without her fault, by the least negligence or want of skill or prudence on the part of the defendant or its employees in charge of the train, the company is liable."

At the defendant's request the following instructions were given:

"Before the plaintiffs can recover in this action, it must appear that defendant was guilty of some act of negligence which directly contributed to the accident. It must also appear that *Mrs. Curtis* was without the least fault or negligence on her part which in any wise contributed to the accident; and it is the same whether what she did was of her own volition or by the advice or guidance of her husband."

"The law did not require defendant to anticipate or presume that plaintiff might be negligent. Defendant might lawfully presume the contrary; and might act upon the assumption that plaintiff would observe all due and proper precaution, according to the circumstances surrounding him."

"It is not necessarily an act of negligence on the part of defendant to suffer a momentary arrest of motion of the cars in bringing the train to the station and to its proper and convenient location. If such

temporary arrest of motion is incident to the careful management of a mixed train like the one in question, then to suffer it would not be an act of negligence."

"If the evidence shows defendant to have moved the train to the station in the mode usual upon the well regulated roads of the country, and practiced by good conductors and engineers, the observing of such usual mode cannot be deemed an act of negligence."

"The circumstance that the train was behind its usual time, has no significance or relevancy in this case, unless that circumstance directly or proximately contributed to the accident and injury complained of."

"What the law demanded of the defendant is only that which men of skill and vigilance are capable of exercising before the happening of an accident, and not the adoption of extraordinary and prophetic measures of precaution, which the peculiar circumstances of the event may afterwards show might have prevented it."

"The burden of proof is upon the plaintiffs to show negligence on the part of the defendant. If they fail to show any facts which in law would be deemed negligence, then the plaintiffs cannot recover, and the fact or circumstance relied on must have contributed to the injury complained of; and in this connection the jury will also understand that they must be convinced from the evidence that the plaintiffs were guilty of no fault or negligence on their part."

"It is not enough to say or find that there is some evidence of negligence on defendant's part. A scintilla of evidence, or a mere surmise that there may have been negligence on the part of the defendant, will not warrant the jury in finding a verdict for the plaintiffs. There must be evidence upon which the jury can reasonably conclude that there was negligence."

"If the evidence in this case is equally consistent with either view—with the existence or non-existence of negligence—the jury should find for the defendant."

"If the conductor warned the passengers to keep away from the train, it was the plaintiffs' duty to have heeded such warnings; and if *Mrs. Curtis* attempted to board the train before it had apparently reached its location at the platform, and when it was apparent that it had not reached said location, she was guilty of negligence, and cannot recover."

The following instructions, asked by the defendant, were refused:

"1. If *Mrs. Curtis* attempted to enter the train while in motion, before it had been located at the station for the reception of passengers, and before the car in the rear, intended for the reception of passengers at that section, had arrived at the platform, such act is in law negligence, notwithstanding that at the instant she stepped upon the platform of the car, it had been momentarily arrested in its motion; and she cannot recover if such act contributed to the injury."

"2. The question as to whether there was a suspended light at the station, or whether the station master was upon the platform, when the train arrived, or as to how many brakemen there were upon the train, are each and all entirely irrelevant and immaterial in this case, unless the cause of the accident could be directly traced to one or more of them."

"3. The plaintiffs having charged in their complaint the fact solely that defendant had once stopped at the station, and departed therefrom without allowing a reasonable time for the plaintiffs to get aboard, cannot recover upon or for any other cause."

"4. If, at the time when the plaintiffs attempted to board the train, the sleeping car had not yet come up abreast the platform, that circumstance was enough to admonish passengers that the train was not located at its stopping place; and if the plaintiffs observed this, it not only tends to show negligence on their part, but also to disprove negligence on the part of the defendant."

" 5. If the conductor warned the passengers to keep away from the train as he was passing along in the door of the baggage car, when he had done so it was his duty to give his attention to his train; and it cannot be said to be negligence on his part thus to give his attention, especially if there were other officers of the train to direct passengers where to go to get aboard."

Verdict for the plaintiffs; new trial denied; and defendant appealed from a judgment on the verdict.

*Emmons & Van Dyke*, for appellant.

*Butler & Winkler*, for respondents.

DIXON, C. J.   Notwithstanding the criticisms of the learned counsel for the defendant, we are of opinion that this cause was fairly submitted to the jury upon instructions which covered the whole law of the case. Of the several instructions prayed by the defendant, eleven were given and five refused, and we think there was no error in such refusal.

Of the prayers for instructions refused, the first was improper, because it assumed that there was a car in the rear intended for the passengers at that station, which was a disputed fact, and one as to which the testimony was conflicting.   It was for the jury to find the fact from the testimony, if fact it was, and not for the court to assume it.   It also assumed that the plaintiffs knew or understood that the car in the rear was intended for them, and were therefore guilty of negligence in attempting to enter any other car before the car in the rear was drawn up to the station.   This was a fact not sustained by the evidence, or at least was doubtful, and not to be assumed by the court.   And the prayer likewise ignored the fact, if the jury should so find (and there was certainly evidence tending to show it), that some one in charge of the train—some officer or employee of the company having apparent authority—directed the passengers waiting at the sta-

tion "to go to the hind cars and get aboard." This direction the plaintiff *Dan. D. Curtis* testifies he heard, and that, in common with many other passengers, he acted in pursuance of it in assisting his wife and in going himself upon the platform of the car. This fact, if the jury should so find—and it was for them to say— had a most material influence on the question whether it was "in law negligence" for the plaintiff *Mrs. Curtis* to step upon the platform of the car at the time she did, and received the injury from the sudden forward movement of the train. The evidence tending to show this fact, and what the jury might find with respect to it, was entirely ignored.

The second prayer for instruction was, that whether there was a suspended light at the station, or the station master was on the platform when the train arrived, or whether there was a sufficient number of brakemen upon the train, were each and all entirely immaterial and irrelevant questions in the case, unless the cause of the accident could be directly traced to one or more of them. In view of the defense made by the company, and the circumstances under which the accident happened, it is obvious to our minds that the prayer ought not to have been granted. The facts assumed in the prayer, which were omissions of duty on the part of the company, may, in conjunction with other acts of negligence on its part which the evidence tended to establish, have operated to cause the injury. Each fact or act may have had its influence in combination with others; and to have charged that each and all of them were entirely irrelevant and immaterial, unless the cause of the accident be *directly* traced to one or more of them, would have been going too far in requiring the jury to sift and examine each fact by itself, and determine what influence it had in causing the accident, and that such influence was *direct*, or otherwise to reject it altogether in their consideration of the general question. This would be an impracti-

cable and impossible mode of examining questions of fact by a jury composed of twelve men, and the law does not require it. It was enough if the jury were able to say, from all the facts, that it was the negligence of the company which caused the injury, and they could not be required to consider and determine the precise effect of each particular fact, and whether it directly or indirectly contributed to the injury.

The next instruction prayed, proceeded upon the ground that under the allegations of the complaint there could be no recovery except for the negligence of the company in suddenly starting the train after it once stopped at the station, without allowing a reasonable time for the plaintiffs to get aboard. Such is the material charge and gravamen of the complaint, which the plaintiffs were undoubtedly required to prove. But the idea and effect of the instruction prayed, was, that no other act of negligence on the part of the company which might have contributed to produce the injury, or in the absence of which the accident might possibly have been prevented, was to be examined or considered by the jury. It must have been so understood by the jury, if it had been given. Such were the omissions to have a light suspended at the station, or a sufficient number of brakemen on the train to regulate and control its motion, and to stop it properly when drawn up at the station, and the neglect of the station master to be present on the platform to direct passengers when and where to enter the cars. These were facts which, if not important to be considered in connection with the very act of starting the train, were certainly very important to be considered with reference to the defense urged by the company, that the plaintiffs were themselves guilty of negligence in attempting to enter the cars at the time and in the manner they did. It was very material to that question whether the platform was suitably lighted, the station master present, and the train brought up to

the station in a proper and skillful manner. If, without sufficient light to enable them to observe the length and position of the train, with no person present on the platform to guide and direct them, and with a jerking, irregular movement of the train, now apparently at a full stop and then moving suddenly forward, the plaintiffs made a mistake, clearly such mistake was not to be regarded in like manner the result of negligence or carelessness on their part, as if these circumstances had not existed. These were most important facts upon which the question of negligence in the plaintiffs depended; and this was a sufficient reason for refusing not only this prayer for instruction, but also that last above considered.

And we cannot view the circumstance that the sleeping car had not yet come up abreast of the platform when the plaintiffs attempted to go aboard the train, as the learned counsel for the company do. Every one having had any experience knows that trains frequently stop at stations before all the cars are drawn up opposite the platform. This often happens from necessity, because the train is too long or the platform too short to admit of all the cars being brought alongside of it. It does not appear, either, that the plaintiff knew or could know the length of the train as compared with that of the platform, or ought reasonably to have expected or inferred that it was the intention to bring the sleeping car up abreast of the platform before passengers at that station were to enter. It was not, therefore, negligence *per se*, as the next or fourth prayer for instruction in the order of refusal assumed, for the plaintiffs to attempt to get aboard of the train under such circumstances; and so that prayer ought not to have been granted.

And the last prayer, whilst it may have been quite correct as an abstract proposition defining the duties of the conductor, if it had been an action against him for negligence, was yet, so far as we can see, wholly

irrelevant in this case.   It might have been granted, perhaps, without objection, and still we can see no objection to refusing it.   The plaintiffs' right of recovery did not depend upon whether conductor Gentle did his duty as a conductor should, but upon the question of negligence on the part of the company as shown by all the facts and circumstances of the case. It was consistent with everything claimed by the plaintiffs that the conductor should have performed his duty in the manner assumed, and so the company was not prejudiced by the refusal.

Two instructions asked by the plaintiffs, and which were given, are specially objected to by counsel for the company.   The first was:  " If the plaintiffs, in taking the train in question, acted as persons of common sense and ordinary prudence and intelligence usually act in like cases, then there was no such negligence on their part as would prevent a recovery by them in this action."   It is insisted that the law knows no such criterion as is here suggested, to determine the legal character of a given act.   On the contrary, we think such to be the very criterion by which the law judges.   What is negligence but a relative term, by which we determine the character of a given act by comparing it with what other persons, or the great majority of other persons of ordinary prudence and intelligence, would have done under like circumstances ?   All negligence is relative, and it is only by this sort of comparison that we determine, or the law determines, that this or that act was negligent.   We call that prudent or not negligent which other persons belonging to the class known as careful and intelligent would have done in like case ; and, on the other hand, we call that imprudent or negligent which such other persons would not have done.   Such is the test of the law, and the only practicable test ; and the instruction was proper.

And the other instruction given at the request of

the plaintiffs was also proper, and its propriety is best explained by its own language. If, under the circumstances of this case, the train, in being brought up to the station, came to a stop in such a manner as to induce the belief on the part of the passengers in waiting on the platform that it had stopped for the reception of passengers, and then, when the passengers, acting on this belief, were going aboard, started again without caution or signal given, that would constitute an act of negligence on the part of the company, and be so without regard to the question whether the starting was one of necessity, or whether the stop was an actual or only an apparent one. It was the duty of the company, if the passengers were not to enter the cars under such circumstances, to have some one there to warn and prevent them, and of the servants and employees in charge of the train not to start it without previous caution or signal given.

These observations, we believe, dispose of all the objections, both to the instructions and refusals to instruct, and the admission of evidence, and show that there was no error for which the judgment should be reversed.

*By the Court.*—The judgment is affirmed.