The Indiana Car Company v. Parker.

Filed Jan. 29, 1885.

---

No. 10,163.

THE INDIANA CAR COMPANY v. PARKER.

MASTER AND SERVANT.—*Fellow Servant.—Liability of Master.— General Rule.* —As a general rule, the common master is not liable to a servant for an injury caused by the negligence of a fellow servant engaged in the same line of employment.

SAME.— *Who are Fellow Servants.*—Servants serving a common master in the same line of employment are fellow servants, although some may be superior to others.

SAME.—*Alter Ego.— When Master is Liable.*—Where a non-resident corporation entrusts to a superior resident officer, or agent, the duty of superintending the machinery of its factory and of managing its business, it is responsible to a servant who suffers an injury from unsafe or defective machinery upon which the servant is employed, under the control and direction of such officer or agent.

SAME.—*Agent Representing Master.—Delegation of Master's Duties.*—Where the master delegates to an agent the performance of duties which the law devolves upon him, the agent stands as the representative of the master, and a servant may maintain an action for injuries caused by the negligence of the agent in matters in which he performs the duties of the master and is his representative.

SAME.—*Duty of Master to Provide Safe and Suitable Machinery.*—It is the duty of the master to use ordinary care and diligence to provide safe and suitable machinery for use by the servants whom he employs to work upon it.

SAME.—*Duty to Keep Machinery in Safe Condition.*—The master's duty does not end with providing safe and suitable machinery, but he is also bound to exercise a reasonable supervision over it, and to exercise ordinary care in keeping it in safe condition for use by his servants, and this duty he can not rid himself of by casting it upon an agent.

SAME.—*Degree of Care Required of Master.*—It is only ordinary care that is required of the master, but ordinary care requires that he should take

| | |
|---|---|
| 100 | 181 |
| 124 | 428 |
| 127 | 51 |
| 100 | 181 |
| 129 | 264 |
| 100 | 181 |
| 130 | 324 |
| 130 | 349 |
| 100 | 181 |
| 132 | 80 |
| 132 | 113 |
| 132 | 184 |
| 132 | 201 |
| 132 | 343 |
| 133 | 237 |
| 100 | 181 |
| 134 | 158 |
| 134 | 272 |
| 134 | 467 |
| 136 | 190 |
| 136 | 402 |
| 136 | 469 |
| 100 | 181 |
| 138 | 61 |
| 100 | 181 |
| 140 | 67 |
| 140 | 653 |
| 100 | 181 |
| 144 | 692 |
| 146 | 440 |
| 146 | 488 |
| 146 | 567 |
| 147 | 266 |
| 100 | 181 |
| 151 | 308 |
| 152 | 469 |
| 152 | 597 |
| 152 | 687 |
| 152 | 688 |
| 100 | 181 |
| 153 | 622 |
| 100 | 181 |
| 156 | 427 |
| 100 | 181 |
| 159 | 87 |
| 159 | 667 |
| 159 | 668 |
| 100 | 181 |
| 160 | 286 |
| 100 | 181 |
| 161 | 695 |
| 100 | 181 |
| 164 | 511 |
| e164 | 512 |
| 164 | 515 |
| 164 | 521 |

The Indiana Car Company *v.* Parker.

notice of the liability of a rope to become worn and unsafe from age and use.

SAME.—*Measure of Damages.*—In computing damages, it is proper to take into consideration the pain and suffering endured by the injured servant, the expenses incurred for medical attention, the permanent effect of the injury, and its effect upon the ability of the injured person to earn money, or to pursue his trade or profession.

SAME.—*Excessive Damages.*— *Verdict.*—The appellate court will not interfere with the verdict of the jury in such a case as this on the ground that the damages are excessive, unless they are such as to induce the belief that the jury acted from partiality, prejudice or corruption.

SAME.—*Contributory Negligence.*—Where the evidence upon the question of contributory negligence is conflicting, or the inferences to be drawn from it are doubtful or not clear, the court will not decide, as a matter of law, whether there was or was not contributory negligence, but will, under proper instructions, leave the question to the jury as one of fact.

SAME.—*Obeying Directions of Vice-Principal.*—A servant can not, as matter of law, be deemed guilty of contributory negligence because he changes from one part of the machinery to another in the shop where he is employed, in obedience to the directions of the agent set over him by the master.

EVIDENCE.—*Exhibition of Injured Hand to Jury.*—It was not a material error to permit the plaintiff in the course of his testimony to exhibit his injured hand to the jury.

From the Henry Circuit Court.

*W. D. Foulke, J. L. Rupe, J. H. Mellett* and *E. H. Bundy,* for appellant.

*W. F. Medsker,* for appellee.

ELLIOTT, J.—The complaint of the appellee alleges that he was employed by the appellant; that while engaged in the discharge of the duties of his employment, he received an injury, and that this injury was caused by the fault and negligence of the appellant in providing unsafe and defective machinery.

In a very able and elaborate brief, counsel for appellant argue that the appellee is not entitled to recover because the negligence which caused the injury was that of a fellow servant, the foreman of the shop in which the appellee was employed; and that for such negligence the employer is not liable.

We concur with counsel in the statement of the general principle, that a foreman is a fellow servant of those working with him, and that for the foreman's negligence in the discharge of his duties as foreman, the master is not responsible to a fellow servant. The overwhelming weight of authority sustains this general doctrine, and our own court has been one among its staunchest supporters, as a long line of decisions attest. *Ohio, etc., R. R. Co.* v. *Tindall*, 13 Ind. 366 ; *Wilson* v. *Madison, etc., R. R. Co.*, 18 Ind. 226 ; *Slattery* v. *Toledo, etc., R. R. Co.*, 23 Ind. 81 ; *Ohio, etc., R. R. Co.* v. *Hammersley*, 28 Ind. 371 ; *Columbus, etc., R. W. Co.* v. *Arnold*, 31 Ind. 174 ; *Sullivan* v. *Toledo, etc., R. W. Co.*, 58 Ind. 26 ; *Gormley* v. *Ohio, etc., R. W. Co.*, 72 Ind. 31 ; *Robertson* v. *Terre Haute, etc., R. R. Co.*, 78 Ind. 77 ; *Boyce* v. *Fitzpatrick*, 80 Ind. 526 ; *Drinkout* v. *Eagle Machine Works*, 90 Ind. 423.

In a recent case, *Railroad Co.* v. *Ross*, 31 Alb. L. J. 61, the Supreme Court of the United States, by a divided court, four of the judges dissenting, laid down a somewhat different doctrine, but, as said by a reviewer : " It is probable that a doctrine approved by Chief Justice SHAW and uniformly followed by every State, except three or four, will hold its own against a bare majority decision of the Federal court." 31 Alb. L. J. 81.

In *Columbus, etc., R. W. Co.* v. *Arnold, supra,* the principle was applied to a case where the servant injured was a fireman on a locomotive, and the person guilty of negligence was a master mechanic. That case is an extreme one, and does, perhaps, carry the doctrine beyond its limits.

In *Robertson* v. *Terre Haute, etc., R. R. Co., supra,* the servant injured was a brakeman, and the agent guilty of negligence was a train dispatcher ; and in *Drinkout* v. *Eagle Machine Works, supra,* the servant who received the injury was employed as a laborer in the shop of which the agent, guilty of negligence, was a foreman.

In *Brazil, etc., Coal Co.* v. *Cain*, 98 Ind. 282, the principle was applied to the case of a " bank boss " in a coal mine,

whose duties were the same as those of a foreman. We shall find abundant authority to the same effect outside of our own reports.

In *Wilson* v. *Merry*, 1 L. R., 1 Scotch & Divorce App. 326, it was held by the House of Lords that a servant employed as a miner could not recover against the owner of the mine for injuries caused by the negligence of the manager. Decisions involving similar principles will be found in *Brown* v. *Accrington, etc., Co.*, 3 H. & C. 511; *Wigmore* v. *Jay*, 5 Exch. 352; *Searle* v. *Lindsay*, 11 C. B. N. S. 428; *Howells* v. *Landore, etc., Co.*, L. R., 10 Q. B. 62 (11 Moak's Eng. R. 153); *Allen* v. *New Gas Co.*, L. R., 1 Exch. Div. 251.

In *Albro* v. *Agawam*, 6 Cush. 75, the agent guilty of negligence was the superintendent of a factory, and the servant injured was a person employed in running one of the spinning machines, and it was held that the relation was that of fellow servants. *Northcoate* v. *Bachelder*, 111 Mass. 322, and *Zeigler* v. *Day*, 123 Mass. 152, assert a like doctrine.

In the case of *Hard* v. *Vermont, etc., R. R. Co.*, 32 Vt. 473, the injured servant was an engineer, and the person guilty of negligence a master mechanic in charge of the locomotives, and it was held that the principal could not be made answerable. *Brown* v. *Winona, etc., R. R. Co.*, 27 Minn. 162, S. C., 38 Am. R. 285, decides that the relation of fellow servants exists although one is the overseer or foreman. It is, however, held in Iowa that the fact that the superior agent has charge of the subordinate ones does not change the relation from that of fellow servants, unless the superior has authority to hire and discharge subordinate servants. *Peterson* v. *Whitebreast, etc., Co.*, 50 Iowa, 673; S. C., 32 Am. R. 143.

In *Blake* v. *Maine Central R. R. Co.*, 70 Maine, 60, the remark of the judge in *McAndrew* v. *Burn*, 39 N. J. 115, S. C., 35 Am. R. 297, that "A fellow servant I take to be any one who serves and is controlled by the same master," was approvingly quoted, and it was held that the principle applied, although one servant was subordinate to the other. The Su-

preme Court of Pennsylvania has held, in several cases, that the fact that one of the agents was a foreman having control of the other does not change the rule, and that they are, nevertheless, fellow servants of a common master. *Lehigh Valley Coal Co.* v. *Jones,* 86 Pa. St. 433; *Delaware, etc., Canal Co.* v. *Carroll,* 89 Pa. St. 374; *Keystone, etc., Co.* v. *Newberry,* 96 Pa. St. 246; S. C., 42 Am. R. 543. This is the doctrine of the Court of Appeals of New York. *Wright* v. *New York Central R. R. Co.,* 25 N. Y. 562; *Crispin* v. *Babbitt,* 81 N. Y. 516; S. C., 37 Am. R. 521.

The cases relied on by the appellant do not conflict with the views expressed in the cases cited by us. *Rogers* v. *Overton,* 87 Ind. 410, was not an action against the master, but was an action by one fellow servant against another, and is, of course, not at all in point. *Boyce* v. *Fitzpatrick, supra,* affirms, in express terms, the general principle of the cases cited by us, but decides that the master is liable for a negligent failure to provide safe machinery. *Indiana M'f'g Co.* v. *Millican,* 87 Ind. 87, belongs to a class of cases essentially different from the present; for it decides, what is not here immediately involved, that a master is responsible if he negligently employs an incompetent servant, and thus causes injury to another servant. The decision in *Mitchell* v. *Robinson,* 80 Ind. 281, directly affirms the general doctrine as we have stated it in the early part of this opinion, but declares that where the agent stands in the place of an absent master, the master is liable for his negligence in performing duties which the law requires of the master. There is, therefore, no conflict in our cases, and they have a full and firm support from the decisions of other courts.

The rules which these decisions so firmly establish as the law of this State may be thus stated :

*First.* The master is not liable to a servant for injuries resulting from the negligence of a fellow servant engaged in the same general line of duty, where the negligent act is performed in the capacity of servant.

*Second.* Servants engaged in the same general line of duty are fellow servants although one may be a superior, and the others may be subordinate servants, under his immediate direction and control.

The facts which it is necessary to consider in connection with the rules of law stated are these: The appellant is a foreign corporation, with its chief officers and agents in another State; it owned and operated a car manufactory at Cambridge City, in this State; this factory was under the general control and management of John McCrie; the wood shop in which the appellee was injured, and where he was employed, was under the immediate control of John Higginson, as foreman.

It is obvious that the rules of law will preclude the appellee from recovering upon the ground that the foreman, in the discharge of his duties as foreman, was guilty of negligence. While Higginson was acting merely as foreman, and not discharging a duty owing by the master to its servants, he was the fellow servant of the appellee. The duties of his position as foreman did not make him anything more than a co-employee, with a higher rank and greater authority than the appellee, and so long as he kept within the line of his duties as foreman, he was a fellow servant, serving a common master. If the negligence which caused the injury occurred while Higginson was engaged in the performance of the duties imposed upon him as an employee in the same general line of service with the appellee, the employer is not liable, because the liability to injury from the negligence of a fellow servant is one of the risks of the service which the servant assumes in entering upon it. The servant does not assume any risk arising from a breach of duty by the master, but does assume the risk of a breach of duty by his co-servants. It is clear that counsel's theory, that the appellee is entitled to recover on the ground that the foreman was guilty of negligence in the performance of his duty as foreman, can not be maintained, and if there is no other ground

upon which the appellee can plant his right to a recovery, this appeal must be sustained.

It is the duty of the master to provide suitable and safe machinery, reasonably well adapted to perform the work to which it is devoted, without endangering the lives or limbs of those employed to operate it. The master is not bound to use the highest care, nor to secure the latest and most improved machinery, but he is bound to use care, skill and prudence in selecting and maintaining machinery and appliances, and for a negligent omission of this duty he is answerable to a servant injured by the omission. *Umback* v. *Lake Shore, etc., R. W. Co.*, 83 Ind. 191, *vide* p. 193; *Boyce* v. *Fitzpatrick, supra; Lake Shore, etc., R. W. Co.* v. *McCormick*, 74 Ind. 440; *Lawless* v. *Connecticut River R. R. Co.*, 136 Mass. 1; *Trask* v. *California, etc., R. R. Co.*, 63 Cal. 96; *Payne* v. *Reese*, 100 Pa. St. 301; *Hough* v. *Railway Co.*, 100 U. S. 213; *Railroad Co.* v. *Fort*, 17 Wall. 553; *Ford* v. *Fitchburg R. R. Co.*, 110 Mass. 241; S. C., 14 Am. R. 598; *Paterson* v. *Wallace*, 1 Macq. 748; *Corcoran* v. *Holbrook*, 59 N. Y. 517; S. C., 17 Am. R. 369; *Ellis* v. *New York, etc., R. R. Co.*, 95 N. Y. 546; *Wilson* v. *Willimantic, etc., Co.*, 50 Conn. 433; S. C., 47 Am. R. 653, *vide* p. 655; *Vosburgh* v. *Lake Shore, etc., R. W. Co.*, 94 N. Y. 374; S. C., 46 Am. R. 148; Wood Master and Servant, 686; 2 Thomp. Neg. 972; Whart. Neg., section 211.

The duty which the master owes to the servant is one which he can not rid himself of by casting it upon an agent, officer or servant employed by him. The distinction between a negligent performance of duty by an agent or servant, and the negligent omission of duty by the master himself, is an important one. Where the duty is one owing by the master, and he entrusts its performance to an agent, the agent's negligence is that of the master. As the master is charged with the imperative duty of providing safe and suitable appliances, this duty he must perform, and if he entrusts it to an agent, and the agent performs it in his place, the agent's act is that

of the master. In authorizing an agent to perform such an act, the principal is, in legal contemplation, himself acting when the agent acts, for he who acts by an agent acts by himself. This principle does not conflict with any of the general rules we have stated, for the agent assumes, by authority, the master's place, and does what the law commands the master to do. He is for the occasion, and in the eyes of the law, the master. If it be true that the agent's act is the master's act, then it must be true that the negligence involved in the act is that of the master himself. The rule which absolves the master from liability for the negligence of the fellow servant has no application whatever where the agent stands in the master's place. The reason of the rule fails, and where the reason fails, so does the rule itself. The reasons which support the rule are that servants take the risks of the employment upon which they enter, and that public policy requires that fellow servants should " each be an observer of the conduct of the other." *Farwell* v. *Boston, etc., R. R. Co.,* 4 Met. (Mass.) 49.

The first of these reasons completely fails when it is brought to mind that the servant does not assume the risk arising from unsafe and unsuitable machinery and appliances. The second as surely and completely fails when we affirm, as under all the authorities affirm we must, that the duty to provide safe appliances rests upon the master, and not on any servant, for, surely, servants are not bound to be observers of the master's conduct. It is, therefore, not at all difficult to clearly discriminate and broadly mark the difference between a case where it is the master's duty, as master, that is neglected, and a case where it is the fellow servant's duty, as servant, that is negligently performed. A servant has a right, himself exercising ordinary care, to rely upon his master's care and diligence. He is not bound to watch his master as he is his fellow servant. The rights are reciprocal, the master has his duty as the servant has his. When the master's duty is negligently done, he it is who is guilty of a breach of duty

although he acted through the medium of an agent. If the master were permitted to escape his duty by shifting it to an agent, the practical result would be his entire absolution from the duty which the law imposes. The law will not permit this result, for it will not permit a duty to be evaded, but will require performance by the person upon whom it has fixed it. A different rule from that stated would, in such a case as this, wholly relieve the master from obligation to his servants, for here the foreign corporation acted by its agents, and none of its chief officers were ever at the factory in Cambridge City. If it can not be held responsible for the negligence of these agents in selecting, arranging and maintaining this machinery, the result will be that it is wholly absolved from its duty to its agents and servants.

It is clear upon principle that where the duty rests directly on the master, and he authorizes an agent or servant to perform that duty, he is bound to answer to a servant injured by the negligent performance of the duty, nor are authorities wanting. In one of our text-books it is said: "It is important at this point to remember that the master is liable where the negligence of the offending servant was as to a duty assumed by the master as to working place and machinery. A master, as we have already seen, is bound when employing a servant to provide for the servant a safe working place and machinery. It may be that the persons by whom out-buildings and machinery are constructed are servants of the common master, but this does not relieve him from his obligation to make buildings and machinery adequate for working use. Were it otherwise, the duty before us, one of the most important of those owed by capital to labor, could be evaded by the capitalist employing only his own servants in the construction of his buildings and machinery." Wharton Neg., section 232.

In a thoughtful essay upon this general subject, Judge Cooley says: "We have seen that in some cases the master is charged with a duty to those serving him which he can not

divest himself of by any delegation to others. He is charged with such a duty as regards the safety of his premises, the suitableness of the tools, implements, machinery or materials he procures or employs, and the servants he engages or makes use of. Whoever is permitted to exercise the master's authority in respect to these matters is charged with the master's duty, and the latter is responsible for a want of proper caution on the part of the agent, as for his own personal negligence." 2 Southern Law Rev., N. S. 114, see page 123.

In *Mullan* v. *Philadelphia, etc., Co.,* 78 Pa. St. 25, S. C., 21 Am. R. 2, the court said: "In this case there was some evidence that the entire duty of providing the appliances for loading and unloading the vessels of the defendants, had been entrusted to the discretion of Corcoran. And just to the extent to which the proof went in fixing upon him the responsibility for the selection of the rigging and for adjusting and working it, did the same proof tend to establish the fact contended for by the plaintiff, that Corcoran was clothed, as to these duties, with the ultimate power and authority of the defendants." It was held in the case of *Gunter* v. *Graniteville M'f'g Co.,* 18 S. C. 262, S. C., 44 Am. R. 573, that where a superintendent was employed to secure and keep the machinery of a factory in repair, and by his negligence in the performance of that duty caused an injury to a servant in the same general line of employment, the master was responsible. The court said: "So, too, it is conceded to be the duty of the master to provide suitable machinery for the use of his operatives; and if he delegates this duty to another, he is responsible to his servant for any injury caused by the negligence of any person to whom the performance of this duty has been entrusted." In *Crispin* v. *Babbitt,* 81 N. Y. 516, S. C., 37 Am. R. 523, the court stated the general principle, that "The liability of the master does not depend upon the grade or rank of the employee whose negligence causes the injury," and then proceeded thus: "On the same principle, however low the grade or rank of the employee, the master is liable for injuries

caused by him to another servant, if they result from the omission of some duty of the master, which he has confided to such inferior employee. On this principle *Flike* v. *Boston, etc., R. R. Co.,* 53 N. Y. 549, was decided. CHURCH, C. J., says, at p. 553: 'The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care in respect to such acts and duties as it is required to perform and discharge as master or principal, without regard to the rank or title of the agent entrusted with their performance. As to such acts, the agent occupies the place of the corporation, and the latter should be deemed present, and consequently liable for the manner in which they are performed.'" In *Mc-Cosker* v. *Long Island R. R. Co.,* 84 N. Y. 77, the same principle is recognized and enforced. The rule is thus expressed by another court: "The duties are the duties of the master, and he can not evade the responsibilities which are incident and cling to them by delegation to another. When the master appoints some other person to perform these duties, then the appointee represents the master, and though in their performance he may be and is a servant to the master, yet in those respects he is not a co-servant, a co-laborer, a co-employee, in the common acceptation of those terms." *Brothers* v. *Cartter,* 52 Mo. 372; S. C., 14 Am. R. 424.

In another case it was said: "As to the acts which a master or principal is bound as such to perform toward his employees, if he delegates the performance of them to an agent, the agent occupies the place of the master, and the latter is deemed present, and liable for the manner in which they are performed." *Corcoran* v. *Holbrook,* 59 N. Y. 517; S. C., 17 Am. R. 369.

Speaking of the duty of the master to the servant, the Supreme Court of the United States said: "Its duty in that respect to its employes is discharged when, but only when, its agents whose business it is to supply such instrumentalities exercise due care as well in their purchase originally, as in keeping and maintaining them in such condition as to be reasonably and adequately safe for use by employees." *Hough*

v. *Railway Co.*, 100 U. S. 213, 218. *Wabash, etc., R. W. Co.* v. *McDaniels*, 107 U. S. 454.

One of the first of the American courts to adopt and develop the doctrine that a master is not liable to a servant for the negligence of a fellow servant, and a court that has with as much sternness as any in the land enforced the doctrine, says: " The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow servants of those who are engaged in operating it. They are charged with the master's duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them, even when the same person renders service by turns in each, as the convenience of the master may require." *Ford* v. *Fitchburg R. R. Co.*, 110 Mass. 240; S. C., 14 Am. R. 598. The general principle, that where the master entrusts to a servant a duty which he himself owes to those employed by him, he is liable for a negligent discharge of that duty, is also involved, and necessarily decided, in the cases of *Mitchell* v. *Robinson*, 80 Ind. 281, S. C., 41 Am. R. 812, and *Ohio, etc., R. R. Co.* v. *Collarn*, 73 Ind. 261, vide p. 273.

The duty of the employer to provide safe machinery and appliances is a continuing one. Thompson says: " But the master does not discharge his duty in this regard by providing proper and safe machinery, or fit servants, in the first instance, and then remaining passive. ' It is a duty to be affirmatively and positively fulfilled and performed.' He must supervise, examine, and test his machines as often as custom and experience require." 2 Thompson Neg. 984. In support of this doctrine the author cites *Warner* v. *Erie, etc., R. W. Co.*, 39 N. Y. 468; *King* v. *New York Central, etc., R. R. Co.*, 4 Hun, 769; *Shanny* v. *Androscoggin Mills*, 66 Maine, 420; *Lansing* v. *New York Central R. R. Co.*, 49 N. Y. 521; *Snow* v. *Housatonic R. R. Co.*, 8 Allen, 441; *Lewis* v. *St. Louis, etc., R. R. Co.*, 59 Mo. 495; *Chicago, etc., R. R. Co.* v. *Swett*, 45 Ill. 197; *Illinois Central R. R. Co.* v. *Welch*, 52

Ill. 183; *Goheen* v. *Texas, etc., R. W. Co.*, 3 Cent. L. J. 382. This is the doctrine of the Supreme Court of the United States, as appears from the decision in *Hough* v. *Railway Co., supra.*

In *Gunter* v. *Graniteville, etc., Co., supra,* it was said : " It is well settled that it is the duty of the master to provide suitable and safe machinery and appliances for the use of his operatives; and, we think, it is also settled that his duty does not stop there, but that it is likewise his duty to keep such machinery in proper repair and in safe working order, and if these duties, or either of them, are negligently performed, and one of the servants thereby sustains an injury, the master is liable, even though he may have entrusted the performance of such duties to subordinates, by whatever name they may be called." In support of this doctrine the court refers to the cases of *Corcoran* v. *Holbrook*, 59 N. Y. 517; S. C., 17 Am. R. 369; *Brann* v. *Chicago, etc., R. R. Co.*, 53 Iowa, 595; S. C., 36 Am. R. 243; *Fuller* v. *Jewett*, 80 N. Y. 46; S. C., 36 Am. R. 575. The rule is supported by sound principle. The duty of the master is not at an end when he first equips his factory or mill, but continues as long as there are operatives who are entitled to assume that he will use due care to provide safe machinery and appliances. It would overthrow the rule, that the risks which a servant assumes are only such as are incident to the use of machinery selected and maintained by the master with proper care, to deny the validity of our conclusion.

Ordinary care requires that a master shall take notice of the liability of the parts of the machinery to decay from age, or wear out by use. *City of Indianapolis* v. *Scott*, 72 Ind. 196; *Board, etc.*, v. *Legg*, 93 Ind. 523; *Board, etc.*, v. *Bacon*, 96 Ind. 31; *Rapho* v. *Moore*, 68 Pa. St. 404. It certainly needs no argument to prove that a factory owner must know that a rope, or materials of a similar character, will wear out, and that he has no right to assume that wear and use will not weaken or impair them. Ordinary prudence, therefore, re-

quires that he should take notice of the liability of such things to wear out, and make provision for such contingencies. Reason and experience unite in affirming that an owner does not exercise even ordinary care, who gives no attention to the effect upon ropes, belts, timbers or the like, which is produced by the wear of continued use. It would be unreasonable to assert that an owner might entirely disregard the tendency of parts of his machinery to wear out, and intrench himself from liability on the ground that at the outset he had provided safe machinery and appliances.

We have ascertained the general principles which rule such cases as this, and it remains to ascertain whether they were correctly applied to the facts of this case. The appellee, on the morning that he was injured, received an order from Higginson, the foreman under whose immediate control he was, to run what was called the cut-off saw; this saw was a circular one, and worked through a groove in a table. The rope which held the saw back from the table, and in a great measure controlled its operation, broke, and the breaking of this rope caused the injury. The evidence shows that the rope was unsuitable, defective and unsafe, and there is also evidence tending strongly to show that the foreman had notice of its condition prior to the morning the injury occurred. One of the appellee's fingers was cut off, another was badly injured, his thumb was also much injured, his hand was split open to the wrist, his wrist and hand rendered stiff, and its serviceableness much impaired. He was confined to his bed for sometime, abscesses formed, several bones were extracted, and he suffered great pain. He expended for medicine and surgical attention $144.

The court did not err in instructing the jury that the appellant was responsible for the negligence of an agent appointed by it to act in its place in purchasing and maintaining machinery upon which the duties of the appellee required him to work. Nor did the court err in refusing the instructions asked by the appellant, asserting that if the appellant

had employed a competent superintendent, it was not liable although the machinery was unsafe. It was the duty of the corporation to provide and maintain, so far at least as ordinary diligence could do, machinery safe and suitable for the purposes for which it was used, and the court was right in instructing the jury to that effect. We do not think the appellant has just reason to complain of the ninth instruction, which informs the jury that if the exercise of ordinary diligence on the part of the defendant would have apprised it of the defective condition of the rope, and it negligently allowed the rope to become worn and insecure, the plaintiff, if free from contributory negligence, would be entitled to recover. This instruction, taken, as it must be, in connection with the others, was at least as favorable to the appellant as it had a right to ask. The doubt is, whether, under the authorities, the master is not held to more than ordinary diligence in such matters; but, however this may be, the least degree of diligence to which he is held by any case is ordinary diligence.

In computing damages in such a case as this, it is proper to consider the pain and suffering endured by the injured person, the expenses incurred for medical attention, the character of the injury, whether temporary or permanent, and its effect upon the ability of the person injured to earn money or pursue his trade or profession. *City of Indianapolis* v. *Gaston*, 58 Ind. 224; *Wright* v. *Compton*, 53 Ind. 337; *Cox* v. *Vanderkleed*, 21 Ind. 164; *Taber* v. *Hutson*, 5 Ind. 322; *Fisher* v. *Hamilton*, 49 Ind. 341. In this class of cases, exemplary damages can not be awarded, but full compensatory damages may be given. It is said in a text-book of excellent repute, that, "In an action for negligent injury to the person of the plaintiff, he may recover the expense of his cure, the value of the time lost by him during his cure, and a fair compensation for the physical and mental suffering caused by the injury, as well as for any permanent reduction of his power to earn money." Shear.& Redf. Neg., section 606. The court approved an instruction substantially like the one now before us in *Pitts-*

.burgh, etc., *R. W. Co.* v. *Sponier,* 85 Ind. 165, and in *City of Huntington* v. *Breen,* 77 Ind. 29. In *City of Indianapolis* v. *Scott,* 72 Ind. 196, an instruction in almost the exact language of the one under immediate mention was approved.

We think the complaint sufficiently shows that the appellee suffered special damages, for it describes the injury and avers that the " plaintiff's right hand has been permanently injured and ruined, and rendered unfit for use and labor."

It is a settled rule of law that courts will not disturb a verdict on the ground of excessive damages unless they are, as said by Chancellor Kent, so " outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption." *Coleman* v. *Southwick,* 9 Johns. 45. This doctrine has often been enforced by this court. *Ohio, etc., R. R. Co.* v. *Collarn, supra; Yater* v. *Mullen,* 23 Ind. 562; *Alexander* v. *Thomas,* 25 Ind. 268; *Reeves* v. *State,* 37 Ind. 441; *Hoagland* v. *Moore,* 2 Blackf. 167; *Guard* v. *Risk,* 11 Ind. 156. In a recent text-book a like doctrine is laid down, and many authorities cited. Hayne New Trials, section 95.

Judgment affirmed.

Filed Feb. 11, 1885.

### On Petition for a Rehearing.

Elliott, J.—An able brief has been filed on the petition for rehearing, but the principal questions decided are not again discussed, counsel saying: " The view taken in the opinion, however, has such strong reasons to support it that we shall not ask the court to reconsider it."

Ninety-five reasons were stated in the motion for a new trial, and it is now complained that we did not consider all of the questions presented. We did decide all of the main questions and such as counsel fully argued, but it is perhaps true that we did not expressly decide some minor ones, although those decided really rule the case.

The Indiana Car Company v. Parker.

The question upon the evidence as to whether Parker was, or was not guilty of contributory negligence was one of fact. for the jury, and not of law for the court, and as there was evidence satisfactorily supporting the verdict, we must leave it undisturbed. There are, no doubt, cases where the court will determine the question of contributory negligence, but this is not one of them. Whether Parker could have seen the defect, and whether it was such as ordinary prudence and vigilance would have enabled him to guard against, were questions of fact. Descriptions of the defect were given by the witnesses, and it is impossible for the court to say, as matter of law, that he could by exercising ordinary prudence have seen it and avoided injury. It certainly was not one open to observation, and, besides this, one of the superior agents of the corporation, its chief representative in fact, had ordered him to work upon the machinery, and we can not perceive any reason for taking the case from the jury. *Baker* v. *Allegheny Valley R. R. Co.*, 95 Pa. St. 211; S. C., 40 Am.. R. 634. It is quite clear that it would have been error for the trial court to have instructed the jury to find for the appellant, and it follows that this court can not interfere.. *City of Indianapolis* v. *Gaston*, 58 Ind. 224; *Pennsylvania Co.* v. *Hensil*, 70 Ind. 569; S. C., 36 Am. R. 188; *Louisville,. etc., R. W. Co.* v. *Richardson*, 66 Ind. 46; S. C., 32 Am. R.. 94; *City of Washington* v. *Small*, 86 Ind. 462, p. 469; *Terre Haute, etc., R. R. Co.* v. *Buck*, 96 Ind. 346; *Pennsylvania R.. R. Co.* v. *White*, 88 Pa. St. 327; *Willard* v. *Pinard*, 44 Vt.. 34; *Robson* v. *Northeastern R. W. Co.*, L. R., 10 Q. B. Div.. 271; *Curtis* v. *Detroit, etc., R. R. Co.*, 27 Wis. 158; Hutch. Car. 615. In such cases as this the question must, under proper instructions, be left to the jury as one of fact.

We recognize and approve the general rule, that a servant who continues in the master's employment with full knowledge of the risk can not recover for injuries received. *Umback* v. *Lake Shore, etc., R. W. Co.*, 83 Ind. 191; *Lake Shore, etc., R. W. Co.* v. *McCormick*, 74 Ind. 440. But that rule

does not apply here. There is no such evidence as warrants the assumption that the appellee knew of the defective condition of the machinery, or that it was such as to subject him to any extraordinary risks. The jury by their general verdict, and also in answer to interrogatories, explicitly negative the existence of knowledge. It would be a palpable violation of long settled rules to set aside the conclusion of the jury upon the evidence as it comes to us.

A single interrogatory is selected by appellant, and upon that a judgment is demanded. This demand can not be heeded, for the answer is not such as controls, and it is only where the single answer is of controlling force that the general verdict will be set aside. This has been again and again decided. *Grand Rapids, etc., R. R. Co.* v. *McAnnally,* 98 Ind. 412, *vide* pp. 417, 418, and cases cited; *Hereth* v. *Hereth, ante,* p. 35. Besides, it has been very frequently decided that answers to interrogatories will not control the general verdict, unless there is an irreconcilable conflict, and here there is no such conflict. But if we are wrong in applying these rules, still the appellant can not succeed, for all that appears in the answer is that one of the superior agents of the corporation, the one in charge of the shop where appellee worked, had knowledge of the defect, and it is quite clear that his knowledge would not conclude the appellee. *Atlas Engine Works* v. *Randall, post,* p. 293. Even if Higginson, the foreman, had been a mere fellow servant in the same line of employment with Parker, instead of a foreman having full authority over him, it is doubtful whether knowledge on the part of Higginson would have concluded Parker.

We do not think it can be said as a matter of law that a workman is guilty of negligence who changes from one part of his work to another at the command of the agent set over him by the master. *Rogers* v. *Overton,* 87 Ind. 410. Here there was no change from one shop to another, no change from one branch of business to another, but only a change in the same shop from one piece of machinery to another, and we

can perceive no reason for holding the servant guilty of contributory negligence in making such a change pursuant to the orders of his superior. It would be unreasonable to require servants to disobey the orders of a superior agent under such circumstances. A prudent man has a right, within reasonable limits, to rely upon the ability and skill of the agent in whose charge the common master has placed him, and is not bound, at his peril, to set his own judgment above that of his superior. *Atlas Engine Works* v.*Randall, supra; Rogers* v.*Overton, supra.* There may, perhaps, be cases where it would be contributory negligence to change positions, as, for instance, where the change is made to a branch of business with which the servant is unacquainted; but this is not such a case, for here the superior agent had authority to give orders, had charge of the branch of business in which the servant was employed, and the change did not take the servant out of the line of his employment. *Dowling* v. *Allen*, 74 Mo. 13; S. C., 41 Am. R. 298; *Cone* v. *Delaware, etc., R. R. Co.*, 81 N. Y. 206; S. C., 37 Am. R. 491; *Cowles* v. *Richmond, etc., R. R. Co.*, 84 N. C. 309; S. C., 37 Am. R. 620; *Ryan* v. *Bagaley*, 50 Mich. 179; S. C., 45 Am. R. 35; *Corcoran* v. *Holbrook*, 59 N. Y. 517; S. C., 17 Am. R. 369; *Luebke* v. *Chicago, etc., R. W. Co.*, 59 Wis. 127; S. C., 48 Am. R. 483; *Manufacturing Co.* v. *Morrissey*, 40 Ohio St. 148; S. C., 48 Am. R. 669.

In the course of his testimony, and in explaining the character of his injury, the appellee exhibited his injured hand to the jury. There was no substantial error in permitting this to be done. Wharton says: "Injury to the person may also be proved by inspection. Thus in an action to recover damages for an injury to a limb, the injured limb may be exhibited on trial." Whart. Crim. Ev., section 312. A great number of interesting cases are collected by him, all holding such evidence admissible. One among the most remarkable and amusing cases of this general character is that of *Thurman* v. *Bertram*, 20 Alb. L. J. 151, where a baby elephant was brought into one of the English courts. In his work on

Trial Evidence, p. 599, Abbott says : " The injured member may be exhibited to the jury." An English author says that evidence afforded by inspection is of the highest character. 1 Taylor Ev., p. 513. By another English writer the same view is taken. Best Princ. Ev. 199. There has been much discussion as to whether a person accused of crime can be compelled to submit his person to the inspection of the jury, but it is agreed on all hands that instruments with which a crime was committed, the clothing of the accused or of the deceased,. wounds and marks on their person, may be given in evidence. 15 Cent. L. J. 2 and 209 ; 22 Alb. L. J. 145 ; Rogers Exp.. Tes., p. 104.

Our own decisions have, in a great variety of cases, recognized the right to submit to the jury persons and things for inspection. *Fleming* v. *State*, 11 Ind. 234 ; *Story* v. *State*, 99 Ind. 413 ; *Short* v. *State*, 63 Ind. 376 ; *McDonel* v. *State*, 90 Ind. 320, *vide* p. 328 ; *Beavers* v. *State*, 58 Ind. 530. Perhaps the most numerous class of cases in which the right of the jury to inspect a thing has been discussed is that in which the genuineness of written instruments has been involved, and it has been uniformly held that it is competent for the jury to make such inspections, and that they may be aided by magnifying glasses. Lawson Exp. and Opinion Ev. 415.

The case of *Stephenson* v. *State*, 28 Ind. 272, does not touch the question here involved as is evident from the statement of the court, for that statement shows that no evidence at all was offered, the trial judge holding that as the defendant was in court there was no necessity for any evidence as he could determine the defendant's age from his appearance. The case of *Ihinger* v. *State*, 53 Ind. 251, decides that an instruction given by the court was erroneous for the reason that it made the case turn entirely upon the personal appearance of the party rather than upon the testimony of the witnesses. The decision in *Robinius* v. *State*, 63 Ind. 235, does go farther and holds that the court trying the case has no right to take into account the personal appearance of the accused in de-

termining the question of his age. Conceding the correct-
ness of this decision, although it has been strongly assailed
as requiring a judge to disregard the evidence of his own
senses, still there is a distinction between such a case and the
present, for where age is the material question, as it was in
the case cited, the decision upon inspection really determines
the whole case; while, in such a case as the present, the in-
spection of the wounded member simply illustrates and makes
clear the testimony of the party and assists in determining
the character of one of the facts in the case. There is still
another distinguishing feature, and that is this, in the present
case the question is not as to the effect of the exhibition of
the wounded hand; while in the case cited the question was
entirely as to the force and effect of the inspection of the
person of the accused.

All that we are now required to decide is, whether it was
substantial error to allow the appellee to exhibit to the jury
in the course of his testimony his wounded hand; we are
not required to determine whether the result of such an ex-
hibition can be deemed evidence in the strict sense of the
term, or what force and effect should be ascribed to it, if re-
garded as evidence.

Petition overruled April 28, 1885.