Reinhakd, J.
The appellant sued the appellee for damages for a personal injury sustained by him while in the employment of the appellee as a stone dresser in *396 the appellee’s quarry. The questions presented arise upon the ruling of the court in rendering judgment in favor of the appellee and against the appellant upon the special verdict. It appears from the verdict that the appellee was operating a stone quarry where it was engaged in quarrying, dressing and shipping stone for the market. On the day of the injury the appellant was employed by the appellee for the specific purpose of dressing stone and preparing the same for shipment after it had been quarried and placed in the stone yard “on a solid and steady surface, secure and safe to work upon and about.” On the 15th day of June, 1892, the appellant, while in the line of duty was drawing a line on a stone lying north and south in said yard, with his face to the east, and while thus engaged, another stone lying north and south and immediately west of the appellant, fell over eastward and upon appellant’s left leg, breaking the same between the knee and ankle, from which the jury found that the appellant sustained damages in the sum of $1,000. The stone which fell upon and injured appellant was about ten feet long and from twenty to twenty-four inches wide and eight to nine inches thick. It had been placed in the yard by appellee by means of a derrick by direction of one Thomas Heaps, and had been set upon its side or edge so that it could be dressed, and was resting upon loose pieces of spawls and stone, without any props of wood or other supports, and in such manner as to allow it to settle down and turn over on its side suddenly; and by reason of not being thus propped and supported, it fell and injured the appellant, who had no knowledge of its unsafe condition, and had made no examination of the stone and how it was placed.
On the day of the injury, all the officers and proprietors of appellee’s quarry were absent except Thomas Heaps, who had been left in charge of the quarry, *397 ledge, machinery, and hands, with full power to control the workmen, the placing and moving of the stone, the arrangement of the stone for the cutters and dressers to work upon, and to set the same in a secure manner so that appellant and other stonecutters might dress the stone for shipment. At the time of the injury Heaps had exclusive control of the quarry and had full command of the men, with power to hire and discharge employes at the place where appellant was injured. The stone which fell on appellant had been sitting on its edge in the stone yard, in the unsafe condition in which it was when it fell, for two hours before the accident occurred, and could have been examined by Heaps, and its unsafe condition ascertained by him in ample time to have prevented the injury had he undertaken or made any effort to do so. It was the duty of the stonecutters, when they reached the stone to be dressed, to place spawls under such stone, and level it up, and to call other employes to help them, if necessary, in so doing, but the stone which fell upon the appellant had not been reached by him for the purpose of being dressed, nor by any other stonecutter. Appellant was required at other times to do ordinary labor about the quarry at less remuneration than he received for stonecutting, but at the time of the injury, his employment was exclusively that of dressing stone, and the duties connected therewith, as stated. Heaps had over him certain superior officers, but they were not present about the quarry on the day of the injury.
We think it was the duty of the appellee to furnish the appellant with a reasonably safe place in which to do his work, and the finding that appellee was to place the stone to be dressed on a solid and steady surface, secure and safe to work upon and about, shows that he had a right to assume that this had been done. It was *398 not his duty, therefore, to examine the stone about him to ascertain if they were all securely placed and free from danger of falling over while he was engaged in dressing other stone. It is true that the appellant assumed all ordinary risks incident to the employment, but we think the finding clearly shows that this was not one of the risks assumed. Nor is there any finding to indicate that the danger was so obvious as that the appellant must have perceived it, and that his failure to do so rendered him guilty of contributory negligence. The rule that the master owes the servant and employe the duty of providing him with reasonably safe places and appliances in the performance of his work, is not denied by appellee's learned counsel. Krueger, Admr., v. Louisville, etc., R. W. Co., 111 Ind. 51; Brazil, etc., Coal Co. v. Hoodlet, 129 Ind. 327; Bradbury v. Goodwin, 108 Ind. 286; Pittsburgh, etc., R. W. Co. v. Adams, 105 Ind. 151; Baltimore, etc., R. R. Co. v. Rowan, 104 Ind. 88; Indiana Car Co. v. Parker, 100 Ind. 181; Parke County Coal Co. v. Barth, 5 Ind. App. 159.
It is contended, however, on behalf of appellee, that the case does not come within the rules just announced, inasmuch as the yard in which the work was being done was a safe and secure place, and there is no complaint that appellant was not furnished with proper appliances. We think, on the contrary, that the stone, which was shown to have been insecurely placed and negligently suffered to remain in that condition in close proximity to where the appellant was at work, was as much a part of the place where such work was being done as would have been a dangerous pitfall of which the appellant had not been apprised.
In Parke County Coal Co. v. Barth, supra, a coalminer was injured by the falling of a piece of slate from the roof of the passage way through which he entered the *399 room in which he worked. In that case it was held by this court that it was the master’s duty to keep such place reasonably safe, and that the servant had a right to assume that it was so kept, and that he was not required to inspect the premises for the purpose of discovering hidden dangers.
The finding in the present case expressly shows that under the terms of the contract of employment the appellee was in duty bound to place and keep the stone upon a safe and secure foundation, and we can conceive of no reason why the appellee should be exempt from liability from the consequences of its negligent failure to do so. That a stone of the dimensions of the one mentioned, when placed upon its edge, is likely to fall over at all events, can not be assumed by us. If this were true, there never would be any safety in working in proximity' to the same, and the employes would of course always be negligent in attempting to do so. This, however, is not the theory ©f the defense, for it is urged, not that the appellant was negligent in working there at all, but in failing to inspect the foundation of the insecure stone, and in making the same secure himself. This, as we have seen, was not his duty, and he can not be held accountable for failure to do that which devolved upon his employer, or for reposing confidence in the latter as having performed that which its contract required it to perform.
It is further contended, however, that even if it was shown to have been the duty of Thomas Heaps to see that the stone were all placed securely, there could still be no liability on the part of appellee for the negligence of Heaps, inasmuch as he was only a fellow-servant of the appellant. It can make no difference, in our opinion, whether Heaps was a mere coservant with the appellant or whether he sustained the relation of vice prin *400 cipal to the appellee. If it be true, as found by the jury, that the appellee was in duty bound to have the stone placed so as to render the place around it reasonably secure, it was negligence in the appellee.to omit this duty, and the fact that the omission occurred through the fault of another servant can not relieve the appellee. As well might it be argued that because a railroad company had employed some one to look after defective machinery and appliances, and because such employe failed to discharge his duty, and caused the injury of another servant, therefore the company was not liable to the servant injured because the negligence was that of a fellow-servant.
If an employe is injured while in the service of his employer by the negligence of a coemploye engaged in the same general employment, when the master has exercised reasonable care in the selection of the coemploye, the employe who is thus injured can not, as a general rule, recover damages of his employer. But this rule has no application to a case where the master owes a duty to the servant directly. In such a case, if the master entrusts the performance of that duty to a fellow-servant, the negligence of the latter is the negligence of the master, and the master is liable to another servant who is injured by such negligence.
As said by Elliott, J., in Indiana Car Co. v. Parker, supra: “In authorizing an agent to perform such an act, the principal is, in legal contemplation, himself acting when the agent acts, for he who acts by an agent acts by himself.”
There are many facts found by the jury of an irrelevant and immaterial character, hut we think, under the findings, the appellant was entitled to a judgment. The jury assessed the damages at $1,000 in case the law was with the appellant, and we are of opinion that the court *401 should have rendered judgment in his favor for that amount.
Filed June 6, 1894;
petition for a rehearing overruled Dec. 14, 1894.
Judgment reversed, with directions to the court below to render judgment in favor of the appellant for $1,000 .and interest from the day of the trial and verdict.